**Affirmed and Majority and Concurring Opinions filed November 15, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00610-CV

---

**SOUTHWINDS EXPRESS CONSTRUCTION, LLC, Appellant**

**V.**

**D.H. GRIFFIN OF TEXAS, INC., Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-22736**

---

## MAJORITY OPINION

Southwinds Express Construction, LLC challenges the trial court's judgment confirming an arbitration award in favor of D.H. Griffin of Texas, Inc. Southwinds contends that the trial court erred in confirming the arbitrator's award because (1) the arbitration agreement between the parties did not cover the claims asserted by Griffin; (2) even if the arbitration agreement between the parties covered Griffin's claims, mediation was a condition precedent to arbitration and did not

occur; and (3) the arbitrator's award was tainted by manifest disregard for the law and gross mistake in applying the law. We affirm.

## BACKGROUND

The Lemoine Company contracted with Griffin in 2013 to serve as the demolition subcontractor on a construction, renovation, and demolition project for a hospital in Louisiana. Griffin, in turn, requested bids from Southwinds for the removal of construction and demolition debris from the project site.

Southwinds proposed that it would perform (1) "concrete excavation and haul off" for free; (2) brick haul-off for $40 per truckload; and (3) construction and demolition ("C&D") haul-off for $12 per cubic yard plus disposal fees. Griffin accepted Southwinds's proposal concerning concrete haul-off and brick haul-off, but declined the proposed terms for C&D haul-off.

Griffin and Southwinds entered into a Subcontractor Agreement reflecting their agreement on September 26, 2013. This agreement included a provision requiring arbitration of "a claim" made by either party.

The arbitration provision in paragraph 3 of the Subcontractor Agreement states as follows:

> In the event that a claim is not resolved through the negotiations of the parties, claim resolution will be resolved through mediation unless, in the sole discretion of [Griffin], [Griffin] believes mediation would be a useless exercise in which case [Griffin], unilaterally, may escalate the claims process to binding arbitration at any time. If mediation fails, both parties agree that the claim will be resolved pursuant to binding arbitration. Any mediation or arbitration will be conducted under the rules of the American Arbitration Association's ("AAA") Construction Industry Dispute Resolution Procedures (including Mediation and Arbitration Rules) in effect at the time of the execution of this Agreement; provided, however, that where there is a conflict, if any, between those rules and this Agreement, this Agreement governs.

2

This written agreement included an attached "Exhibit A" that identified the scope of work under the agreement as follows:

> Southwinds Express Construction LLC will remove and haul off concrete slabs, foundations and parking at the [hospital] site in Lafayette, Louisiana for **No Charge**. Southwinds Express Construction LLC will haul brick and concrete generated from the demolition operation for Forty Dollars ($40.00) per load.

Weeks later, Griffin and Southwinds orally agreed that Southwinds would perform C&D haul-off for $9 per cubic yard including disposal fees.[1]

Southwinds performed C&D haul-off for Griffin until early 2014. Southwinds contends it ceased working because Griffin's payments were not timely.

Griffin contends that Southwinds stopped paying landfill disposal fees in November and December 2013, and that the landfill owner consequently barred Southwinds from use of the landfill. Griffin contends that with no landfill available for debris disposal, Southwinds abandoned work on the project and left Griffin with landfill fee arrearages totaling $67,000. Griffin contends that it was required to pay the landfill fees because the landfill operator threatened to place a lien on the project property if the fees were not paid. Griffin also contends that it

---

[1] To that end, Griffin sent Southwinds a second unexecuted Subcontractor Agreement that was identical to the previously executed agreement except that the scope of work exhibit included this addition: "Construction debris generated and hauled will be an all inclusive rate of $9.00 per cubic yard (including transportation and disposal cost)." The second agreement was dated October 14, 2013.

In the portion of the contract stating that Griffin would pay Southwinds for invoiced amounts within 10 days after Griffin received payment from Lemoine, Southwinds interlineated "except for trucking and dump fees which will be Net 14." Similarly, Southwinds modified the scope of work exhibit with the interlineation, "Payment terms will be Net 14." Southwinds executed the modified second agreement. The parties dispute whether Southwinds returned the modified agreement to Griffin at that time, but it is undisputed that Griffin did not execute the modified second agreement.

had to hire third parties to complete the removal of construction and demolition debris.

Griffin filed a demand for arbitration in March 2014. Southwinds objected to the arbitrator's jurisdiction, contending that the arbitration provision in the written Subcontractor Agreement did not extend to any claims arising from the subsequent oral agreement to provide C&D haul-off services. The arbitrator overruled Southwinds's objection.

A two-day arbitration hearing was held in January 2015. The arbitrator issued an Award of Arbitration on March 12, 2015. In its award, the arbitrator found that the oral agreement was a modification of the Subcontractor Agreement; the oral agreement caused the C&D haul-off to be included within the scope of work of the Subcontractor Agreement; and any claim relating to the C&D haul-off therefore was a claim under the Subcontractor Agreement subject to the Subcontractor Agreement's arbitration provision.

Concluding she had jurisdiction to consider this dispute, the arbitrator determined that Southwinds breached its agreement with Griffin. The arbitrator awarded Griffin $42,251.20 in actual damages, $36,851.08 in attorney's fees, and $8,800 in arbitration fees and expenses; she also ordered Southwinds to release a lien it had filed against the project.

Griffin sought to have the arbitration award confirmed in district court in April 2015. After briefing and argument from the parties, the trial court signed a final judgment confirming the arbitration award on June 16, 2015. Southwinds appealed.

STANDARD OF REVIEW

We review a trial court's decision to confirm or vacate an arbitration award under a *de novo* standard of review. *D.R. Horton–Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Review of an arbitration award is 'extraordinarily narrow.'" *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 841 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (quoting *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.)). We give an arbitration award great deference and indulge every reasonable presumption in favor of the award and none against it. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Amoco D.T. Co.*, 343 S.W.3d at 841.

## ANALYSIS

### I. Arbitrability of the C&D Claims

Southwinds contended below that the C&D haul-off claims were not covered by a valid arbitration agreement because they were the subject of the parties' oral agreement — which, according to Southwinds, constituted a separate agreement distinct from the original Subcontractor Agreement containing the arbitration provision. Overruling Southwinds's objection, the arbitrator determined instead that (1) the oral agreement was a modification of the Subcontractor Agreement; and (2) the C&D haul-off claims therefore fell within the parties' arbitration agreement.

After the arbitrator ruled in Griffin's favor on the merits, Griffin filed an action in district court seeking confirmation of the arbitrator's award. Southwinds moved to vacate the award, contending the arbitrator exceeded her power by

deciding matters outside the scope of her authority — namely, the C&D haul-off claims.

> In its final judgment confirming the arbitrator's award, the trial court stated:

> The Court is persuaded that the agreement between the parties contemplated additional potential work such as the C&D work. Thus, this work arose out of the agreement and, consequently, the arbitration agreement contemplated additional work. Further, the issue of whether there was, in fact, an enforceable oral agreement to do the C&D work was for the arbitrator to decide, not this Court. The Court will note, though, that the agreement between the parties does NOT state that no subsequent oral agreements could be formed; only that no oral representations prior to the written agreement existed or were relied upon.

On appeal, Southwinds contends the trial court erred in determining that C&D haul-off claims fell within the scope of the Subcontractor Agreement's arbitration provision. Griffin responds that the Subcontractor Agreement's arbitration provision governed at least a portion of the dispute between the parties; the arbitration provision referenced that any arbitration would be conducted pursuant to the American Arbitration Association ("AAA") rules, which state that determinations of arbitrability shall be made by the arbitrator; and the parties therefore clearly and unmistakably agreed to submit the determination of arbitrability of the C&D haul-off claims to the arbitrator rather than the trial court.

## A.    Who Determines Arbitrability?

Arbitration is a matter of contract. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).[2]  The question of arbitrability addresses which claims must

---

[2] Because the substantive principles applicable to the analysis in this appeal are the same under both the Federal Arbitration Act and the Texas Arbitration Act, we rely on cases discussing both statutes. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008); *Branch Law Firm L.L.P. v. Osborn*, No. 14-14-00892-CV, 2016 WL 444867, at *3 n.3 (Tex. App.—Houston [14th Dist.] Feb. 4, 2016, pet. denied).

be arbitrated. *Leshin v. Oliva*, No. 04-14-00657-CV, 2015 WL 4554333, at *5 (Tex. App.—San Antonio July 29, 2015, no pet.) (mem. op.); *see also Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) (questions of arbitrability include "whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate").

When there is an undisputed arbitration provision in an agreement between the parties, we ordinarily look to the arbitration provision's language to determine whether the parties "clearly and unmistakably" intended for the arbitrator to determine arbitrability or instead left that decision to the trial court. *See Howsam*, 537 U.S. at 83; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). This case presents a different circumstance in which a subsequent oral agreement governs some of the claims. Griffin contends the arbitration provision applies to all claims at issue because the oral agreement modified the Subcontractor Agreement containing the arbitration provision. Southwinds contends the written contract's arbitration provision does not apply to the C&D haul-off claims because the oral agreement governing C&D haul-off was wholly independent.

Southwinds therefore challenges the existence of an agreement to arbitrate the C&D haul-off claims. As the Supreme Court of Texas has explained:

> [W]here the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue. . . . We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute.

*In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189 (Tex. 2009) (quoting *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003)) (emphasis in original).

7

In *Texas La Fiesta Auto Sales, LLC v. Belk*, 349 S.W.3d 872 (Tex. App.—Houston [14th Dist.] 2011, no pet.), we considered the situation in which a valid arbitration agreement was acknowledged to exist but was alleged to have merged into a later arbitration agreement with different terms. *Id.* at 879-80. The appellants contended that, once it was determined a valid arbitration agreement existed, any issue concerning merger should have been decided by the arbitrator. *Id.* at 880. We concluded that the issue of whether the subsequent contract's arbitration provision superseded the initial arbitration agreement was a question for the trial court. *Id.* Explaining our conclusion, we noted that "it is the trial court's duty to determine whether a later agreement between the parties revokes an arbitration clause, because the court must determine the threshold issue of whether a valid arbitration agreement exists." *Id.* at 881.

In *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576 (Tex. App.—Houston [14th Dist.] 1999, no pet.), we considered a party's argument that "its claims are not based on the Operating Agreement, which contains an arbitration clause, but rather, arise out of a separate unwritten partnership agreement, which was created as a result of the sale of the 50% undivided interest in the pipeline." *Id.* at 584. The party argued that, because its claims were related to the separate partnership, those claims were not subject to the Operating Agreement's arbitration provision. *Id.* Although we did not make an explicit statement to this effect, our *de novo* review of the issue indicates that we reviewed an issue decided by the trial court rather than the arbitrator. *See id.* at 584-86.

These cases inform our analysis here. Similar to the argument advanced in *Valero*, Southwinds contends the C&D haul-off claims arise from a separate agreement. Consistent with *Valero*, we conclude that the arbitrability of the C&D haul-off claim is a matter for trial court determination because those claims

8

allegedly stem from a separate agreement. *See id.* We reach this conclusion because, as we stated in *Texas La Fiesta*, the trial court must determine the threshold issue of whether a valid arbitration agreement exists under circumstances like those present here. *See Texas La Fiesta*, 349 S.W.3d at 881; *see also In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 364 (Tex. App.—Beaumont 2008, orig. proceeding) (whether a later agreement between the parties operated as a novation of an earlier contract containing an arbitration provision was a question for the trial court, not the arbitrator). Accordingly, we conclude that the question of whether the C&D haul-off claims were governed by a valid arbitration agreement was one for the trial court, not the arbitrator.

When, as in this case, the arbitrator determines arbitrability even though it is a question for the trial court, we ordinarily would remand for the trial court to consider the issue. *See, e.g.*, *Leshin*, 2015 WL 4554333, at *8 ("Whether Leshin was a party to the arbitration agreement under some legal theory is a question of arbitrability, which is for the trial court to determine. Therefore, we reverse the trial court's judgment confirming the arbitration award and remand . . . for the trial court to consider the arbitrability issue and determine whether there is any legal theory that would allow the trial court to compel Leshin, in his individual capacity, to arbitrate and be bound by any ensuing award."); *Elgohary v. Herrera*, 405 S.W.3d 785, 793-94 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (remanding for trial court to consider arbitrability). Because the trial court already has made an independent determination that the claims were arbitrable, we review the trial court's determination for error. *See, e.g.*, *Roe v. Ladymon*, 318 S.W.3d 502, 518 (Tex. App.—Dallas 2010, no pet.) (reviewing trial court's independent determination of arbitrability *de novo*).

**B. Were the C&D Claims Arbitrable?**

Both the arbitrator and the trial court determined that the C&D haul-off claims were governed by the Subcontractor Agreement's arbitration provision. Despite the uniformity of result, our determination that it was the trial court's prerogative to resolve the question of arbitrability is important because it determines the applicable standard of review. *See id.* at 511. As the court succinctly summarized in *Ladymon*:

> The parties to this appeal disagree about a preliminary—but critical—question of law: who has the primary power to decide whether Ladymon is required to arbitrate—the arbitrator or a court? The answer determines the applicable standard of review: if the question is primarily for the arbitrator to decide, courts will review the arbitrator's determination of that issue with great deference, but if the question is primarily for the court to decide, courts will review the question independently or de novo.

*Id.*; *see also McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Determining whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement, and we review such interpretations de novo."). Accordingly, we review *de novo* the trial court's determination that the Subcontractor Agreement's arbitration provision governed the C&D haul-off claims. *See, e.g.*, *In re Guggenheim Corp. Funding, LLC*, 380 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) ("[A] determination of the scope of an unambiguous arbitration clause is a matter of contract interpretation and a question of law for the trial court.").

Griffin contends that the oral agreement modified the Subcontractor Agreement, leaving intact the Subcontractor Agreement's arbitration provision and extending its reach to encompass the C&D haul-off claims.

10

The trial court stated in its final judgment that "the agreement between the parties contemplated additional potential work such as the C&D work," and that the C&D haul-off work "arose out of the agreement" and therefore was governed by the arbitration provision. The trial court appears to have concluded that, regardless of whether the oral agreement modified the Subcontractor Agreement or was a stand-alone agreement, the C&D haul-off claims nevertheless arose out of the Subcontractor Agreement and therefore were subject to the arbitration provision. The trial court further noted that whether the oral agreement was actually enforceable was for the arbitrator to decide, suggesting that the oral agreement's validity was a separate inquiry from arbitrability. We agree with the trial court.

Claims generally are arbitrable when the facts alleged "touch matters" that are covered by, have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that contains the arbitration provision. *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d at 366; *see also Branch Law Firm L.L.P. v. Osborn*, No. 14-14-00892-CV, 2016 WL 444867, at *12 (Tex. App.—Houston [14th Dist.] Feb. 4, 2016, pet. denied) ("Where, as here, the contract includes a broad arbitration clause, we consider whether the facts alleged are sufficiently intertwined with the contract and thus arbitrable."); *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 462 (Tex. App.—Dallas 2011, no pet.) (recognizing that claims may become arbitrable when factually intertwined with arbitrable claims). "To be within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *In re Prudential Sec. Inc.*, 159 S.W.3d 279,

11

283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding). We resolve any doubt about the "scope of arbitrable issues" in favor of arbitration. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Valero*, 2 S.W.3d at 590.

Here, we agree with the trial court that the Subcontractor Agreement contemplated additional work. The Subcontractor Agreement stated that Griffin could "at any time require deviation from" the Subcontractor Agreement, including material changes to the scope of work, by providing authorization to Southwinds.[3]

Additionally, the Subcontractor Agreement's broad arbitration provision covered "a claim by [Southwinds] against [Griffin]" and "a claim [filed by Griffin] against [Southwinds]." The parties did not limit the arbitration provision's scope to claims arising out of the Subcontractor Agreement or to claims related to the Subcontractor Agreement. The parties placed no limitation on the nature of the claims between them that fell within the arbitration provision. Because of the broad nature of this arbitration provision, we consider whether the C&D haul-off claims are sufficiently intertwined with the Subcontractor Agreement to be arbitrable. *See Branch Law Firm L.L.P.*, 2016 WL 444867, at *12. The C&D haul-off claims involved the same construction project and the same essential type of work being performed; they differed only in the type of debris removed. Accordingly, we conclude the C&D haul-off claims had a significant relationship to, and were factually intertwined with, the Subcontractor Agreement.

---

[3] Although the Subcontractor Agreement required modifications to the scope of work to be in writing, Texas courts have allowed parties to orally modify contracts with such provisions. *See, e.g.*, *Double Diamond, Inc. v. Hilco Elec. Coop., Inc.*, 127 S.W.3d 260, 267 (Tex. App.—Waco 2003, no pet.) ("A written agreement not required by law to be in writing may be modified by a later oral agreement, even though it provides that it can be modified only in writing."); *see also Chopra & Assocs., PA v. U.S. Imaging, Inc.*, No. 14-13-01099-CV, 2014 WL 7204868, at *4 n.2 (Tex. App.—Houston [14th Dist.] Dec. 18, 2014, no pet.) (mem. op.) (recognizing "that courts have allowed parties to modify an agreement orally despite a no-oral-modification clause"). Moreover, Griffin attempted to authorize the modifications in writing by providing Southwinds with the revised subcontractor agreement.

12

Considering that the contract contemplated additions to the scope of work such as the C&D haul-off, and considering that the asserted claims had a significant relationship with and were factually intertwined with the contractual responsibilities identified in the Subcontractor Agreement, the trial court correctly determined that the C&D haul-off claims were governed by that agreement's broad arbitration provision.[4] *See In re Bath Junkie Franchise, Inc.*, 246 S.W.3d at 366-67 (noting that, "[w]ithout the parties' relationship that arose from the Franchise Agreement, Hygiene and Bath Junkie would not have entered into the Termination Agreement," and concluding that the claims involving the Termination Agreement arose out of and related to the Franchise Agreement and were "within the scope of the claims the parties agreed to submit to arbitration" under the Franchise Agreement); *Gerwell v. Moran*, 10 S.W.3d 28, 32-33 (Tex. App.—San Antonio 1999, no pet.) (where parties entered into an original agreement and a subsequent agreement, with an arbitration provision contained only in the original agreement, claims based on the subsequent agreement were arbitrable where arbitration provision was broad and subsequent agreement was contemplated by original agreement).

We also note that neither the FAA nor Texas law requires arbitration provisions to be signed if they are in writing and agreed to by the parties. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding). An agreement is enforceable when the parties agree on all essential terms. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 29 S.W.3d 291, 300 (Tex. App.—Houston [14th

---

[4] This case does not involve enforcement of an arbitration agreement against a non-signatory; rather, this case involves a determination that a valid arbitration agreement signed by both parties covers claims arising from a separate oral agreement covering factually intertwined issues.

13

Dist.] 2000, no pet.).  Whether an agreement contains all essential terms to be an enforceable contract is a question of law.  *See Southern v. Goetting*, 353 S.W.3d 295, 300 (Tex. App.—El Paso 2011, pet. denied); *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, writ denied).  A party's signature on a contract is "strong evidence" that the party unconditionally assented to its terms.  *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 774 (Tex. App.—Beaumont 2008, orig. proceeding).

The parties here agree that, after they executed the Subcontractor Agreement, they mutually agreed that Southwinds would perform C&D haul-off services for $9 per cubic yard.  To that end, Griffin sent Southwinds a new contract.  The contract was identical to the original Subcontractor Agreement except that it included one additional sentence in the "Scope of Work" exhibit stating that Southwinds would perform C&D haul-off services at $9 per cubic yard. As with the original Subcontractor Agreement, the proposed agreement contained an arbitration provision.  Southwinds interlineated two modifications to the payment terms for "trucking and dump fees," signed the agreement, and alleges that it returned the agreement to Griffin.  Southwinds acknowledges that it performed the C&D haul-off work pursuant to the second agreement. Accordingly, the only contractual term the parties dispute addressed whether payment was to be made (1) within 14 days of invoice; or (2) after Lemoine paid Griffin.

Based on this record, these payment terms were not essential to the agreement.  *See, e.g.*, *Eastman Gas Co. v. Goodrich Petroleum Co.*, 456 S.W.3d 319, 329 (Tex. App.—Texarkana 2015, pet. denied) (concluding that "the manner of payment and the amount and rate of interest [were] not essential terms" in that instance and the agreement was therefore enforceable).  The parties agreed on all

14

material terms and agreed to be bound by the arbitration provision. *See Hardin Constr. Grp., Inc. v. Strictly Painting, Inc.*, 945 S.W.2d 308, 313 (Tex. App.—San Antonio 1997, no writ) (where subcontractor never signed agreement provided by general contractor based on objection to single non-essential term but parties otherwise performed under the terms of the agreement, "the only reasonable conclusion that [the trial court] could have reached was that [the subcontractor] agreed to be bound by all the terms of the subcontract except the [non-essential term]," and that the parties therefore agreed to arbitrate under the arbitration provision in the agreement).

Finally, after having relied on the second written agreement in asserting its counterclaim during the arbitration proceeding, Southwinds cannot argue convincingly that the arbitration provision in that agreement is unenforceable. *See In re Citgo Petroleum Corp.,* 248 S.W.3d at 775 ("Having affirmatively used the "Dispute Resolution Agreement" to support a claim based on the same injury, Rose's challenge to the existence of the agreement based solely on the lack of a signature for Pat Tank is not persuasive.").

The trial court properly determined that the C&D haul-off claims were arbitrable.[5]

---

[5] Southwinds additionally argues that the trial court erred by failing to vacate the arbitrator's award under the Texas Arbitration Act. Southwinds identified two statutory grounds for vacatur of the award. First, it argued that the award should be vacated because there was no valid agreement to arbitrate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4) (Vernon 2011). Second, it argued that the arbitration award should be vacated because the arbitrator exceeded her power by deciding matters outside the scope of her authority, specifically contending that the arbitrator exceeded her authority "by essentially dispensing her own justice in deciding the C&D removal matters without an agreement to arbitrate these matters." *See id.* § 171.088(a)(3)(A).

Having concluded that a valid and enforceable arbitration agreement covered all claims, including the C&D haul-off claims, we reject Southwinds's argument that the trial court failed to properly apply the statutory vacatur grounds.

15

## II.     Mediation as a Condition Precedent to Arbitration

Southwinds next contends that the trial court erred in determining that mediation was not a condition precedent to arbitration.[6]

The Subcontractor Agreement provides:

> In the event that a claim is not resolved through the negotiations of the parties, claim resolution will be resolved through mediation unless, in the sole discretion of [Griffin], [Griffin] believes mediation would be a useless exercise in which case [Griffin], unilaterally, may escalate the claims process to binding arbitration at any time.  If mediation fails, both parties agree that the claim will be resolved pursuant to binding arbitration.

Southwinds argues that Griffin's "bilateral promise to adhere to a specific [dispute resolution] process is illusory and unenforceable" because Griffin "at its own option or whim . . . can stop the dispute resolution process and escalate it" by skipping mediation and going straight to arbitration.  According to Southwinds, "[T]he Subcontractor Agreement does not equally bind both parties to the same dispute resolution procedure" because "Griffin's promise to adhere to the dispute resolution procedure is totally optional to it, but not Southwinds."  Southwinds asserts as follows:  "If enforced as written, [the arbitration provision] deprives Southwinds of a valuable right to resolve disputes through mediation."

Southwinds contends that, after the Subcontractor Agreement is reformed to remove Griffin's supposedly illusory promise, the agreement requires arbitration of claims only if the claims are first mediated unsuccessfully.  Because mediation did not occur, Southwinds contends that arbitration was improper due to the failure to satisfy a condition precedent.

---

[6] In its final judgment, the trial court stated that "the Court is not persuaded that the mediation clause was a condition precedent to arbitration."

## A. Who Determines Whether an Arbitration Provision is Illusory?

Before reaching the merits of Southwinds's contention, we first must address whether the trial court or the arbitrator decides whether the arbitration provision is illusory and unenforceable. We agree with Southwinds that this determination is the trial court's to make, but we rely on a different basis than the one Southwinds urges.

Generally, "[o]nce it is determined . . . that the parties are obligated to submit to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Valero*, 2 S.W.3d at 583 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). In *Valero*, we concluded that the arbitrator decided whether conditions precedent to arbitration were satisfied. *Id.* at 584.

Southwinds relies on *Amir v. International Bank of Commerce*, 419 S.W.3d 687 (Tex. App.—Houston [1st Dist.] 2013, no pet.), to argue that this case falls within an exception to the general rule.

*Amir* acknowledged that, "[t]ypically, questions of whether prerequisites to arbitration have been fulfilled are left to the arbitrators to resolve." *Id.* at 692. The court went on to observe as follows:

> If, however, there is clearly established proof that a strictly procedural requirement has not been met and that procedural requirement precludes arbitration, a court can deny a motion to compel arbitration on this ground. This is a narrow exception. As an example, a trial court cannot compel arbitration when the provision requires the parties to mediate before arbitration. To do so would frustrate the parties' original intent clearly expressed in the agreement.

*Id.* (internal citations omitted); *see also In re Igloo Prods. Corp.*, 238 S.W.3d 574, 579-81 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied])

17

(where neither party suggested that arbitration agreement was ambiguous or that condition precedent had been satisfied, issue was really a "'gateway dispute' as to whether the arbitration agreement covers a particular kind of controversy" for the trial court to decide).

Under *Amir* and *In re Igloo*, a trial court decides the gateway issue of whether arbitration can be compelled in light of a condition precedent when there is no factual dispute about whether the condition precedent has been satisfied. In those circumstances the trial court can make this determination as a matter of law. *See generally Amir*, 419 S.W.3d at 692; *In re Igloo*, 238 S.W.3d at 579-81; *see also, e.g.*, *Omoruyi v. Grocers Supply Co.*, No. 14-09-00151-CV, 2010 WL 1992585, at *8 (Tex. App.—Houston [14th Dist.] May 20, 2010, no pet.) (mem. op.) (noting that courts, including this court in *In re Igloo*, have recognized an exception to the general rule that arbitrators resolve questions of procedural arbitrability — such as satisfaction of conditions precedent to arbitration — when "the issues are factually undisputed").

*Amir* addresses situations in which "there is clearly established proof that a strictly procedural requirement has not been met and that procedural requirement precludes arbitration" — such as, the court notes, where the parties' agreement clearly requires the parties to mediate before arbitration. *See Amir*, 419 S.W.3d at 692. *In re Igloo* involved an arbitration provision restricted to "disputes that cannot first be resolved through [Igloo's] internal dispute resolution procedures or mediation." *See In re Igloo*, 238 S.W.3d at 581. It was undisputed that no mediation had occurred. *See id.*

This case, in contrast, involves an arbitration provision that expressly allows Griffin unilaterally to "escalate the claims process to binding arbitration at any time." Thus, this case does not fall within the "narrow exception" under which the

18

agreement unambiguously requires mediation as a condition precedent to arbitration. *See id.*; *cf. In re Pisces Foods, L.L.C.*, 228 S.W.3d 349, 351, 353 (Tex. App.—Austin 2007, orig. proceeding) (employment agreement requiring both employee and employer to follow multi-step dispute resolution program — including mediation — before arbitrating raised "no question of fact with respect to the mediation prerequisite," and "expressly require[d] mediation as a precondition for requesting arbitration").

Southwinds is correct that the determination here was for the trial court to make, but not for the reason it advances. Southwinds contends that we must (1) determine that Griffin's option to avoid mediation makes the arbitration provision illusory; and then (2) read the option out of the agreement. After removing the option, Southwinds argues that mediation is a condition precedent to arbitration. Because Griffin indisputably did not mediate before arbitrating, Southwinds contends that this case falls within the "narrow exception" described above so the trial court can decide a strictly procedural requirement was not met.

Southwinds flips the order in which we must proceed. Contrary to Southwinds's assertion, the threshold question is not whether a condition precedent was satisfied. Instead, the threshold question is whether an arbitration provision allowing one contracting party to skip mediation before arbitrating is illusory and unenforceable. A decision on the arbitration provision's enforceability comes before a decision on whether the arbitration provision imposes a condition precedent.

When Southwinds asserts that Griffin's option to skip mediation makes the arbitration provision illusory, Southwinds attacks the arbitration provision itself as being unenforceable as drafted. This unenforceability challenge was the trial court's to decide. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex.

2009) (orig. proceeding) (whether there is a valid and enforceable agreement to arbitrate is a legal question subject to *de novo* review); *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008) ("[A]rbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause."); *Omoruyi*, 2010 WL 1992585, at *8 ("[Q]uestions of substantive arbitrability, such as whether an arbitration agreement is enforceable or whether the matter at hand falls within the scope of the agreement, are matters for a court to determine.").

**B.  Did Griffin's Option Not to Mediate Before Arbitrating Make the Arbitration Provision Illusory and Unenforceable?**

In reaching its conclusion that mediation was not a condition precedent to arbitration, the trial court necessarily concluded that Griffin's unilateral option to bypass mediation before arbitrating did not make the arbitration provision illusory and unenforceable.  We agree.

"An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether."  *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding).  The mere fact that an arbitration provision is one-sided does not make it illusory.  *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015); *NACE Int'l v. Johnson*, 01-15-00529-CV, 2016 WL 4486158, at *3 (Tex. App.—Houston [1st Dist.] Aug. 25, 2016, no pet.) (mem. op. on reh'g).

The arbitration agreement in *NACE* provided that disputes would be resolved through arbitration but allowed NACE the unilateral right to pursue litigation if it was unsatisfied by the arbitration result.  *NACE Int'l*, 2016 WL 4486158, at *1.  The other party maintained that the arbitration agreement was illusory "because NACE effectively never agreed to submit itself to binding

arbitration when it reserved the right to pursue litigation if a 'satisfactory settlement' is not reached by the arbitration process." *Id.* at *3. The court concluded that, "[b]ecause both NACE and Appellees must first arbitrate all claims and neither can avoid that promise by amending or terminating the arbitration clause, the arbitration agreement is not illusory." *Id.* at *4.

The arbitration provision in this case provided that the parties would mediate all disputes unless Griffin in its sole discretion believed that mediation would be useless, in which case Griffin could escalate directly to arbitration. The agreement did not allow Griffin to avoid arbitration; nor did it allow Griffin to litigate an unsatisfactory arbitration result. We conclude that Griffin's ability to unilaterally bypass mediation in favor of arbitration did not render the arbitration provision illusory. *See id.* at *4; *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 853-54 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (party's promise to arbitrate claims "at [its] option" did not make arbitration provision illusory); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding) (rejecting argument that arbitration agreement was substantively unconscionable because it bound homebuyers to arbitrate with the manufacturer but did not bind the manufacturer to arbitrate with homebuyers).

Having concluded that the arbitration provision was not illusory, we further agree with the trial court's conclusion that, under the plain language of the parties' agreement allowing Griffin the **_option to bypass mediation_**, mediation was not a condition precedent to arbitration for Griffin. *Cf. In re Pisces Foods*, 228 S.W.3d at 351 (mediation was a condition precedent where employment agreement required mediation before arbitration and provided that the company was "also mutually bound to use this program for any covered claim").

21

## III. Manifest Disregard and Gross Mistake

In its final issue, Southwinds argues that the arbitration award should be vacated because it is tainted by manifest disregard of the law and gross mistake in applying the law. Southwinds contends that the arbitrator manifestly disregarded the law and made a gross mistake of law in deciding matters that were not covered by a valid arbitration agreement.

Under the Texas Arbitration Act, "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award." Tex. Civ. Prac. & Rem. Code Ann. § 171.087 (Vernon 2011); *see also Hoskins v. Hoskins*, No. 15-0046, 2016 WL 2993929, at *4 (Tex. May 20, 2016) ("The statutory text could not be plainer: the trial court 'shall confirm' an award unless vacatur is required under one of the enumerated grounds in section 171.088."). As the Supreme Court of Texas explained in *Hoskins*: "[T]he [Texas Arbitration Act] leaves no room for courts to expand on those grounds, which do not include an arbitrator's manifest disregard of the law." *Hoskins*, 2016 WL 2993929, at *4. Neither is gross mistake a statutory ground for vacating, modifying, or correcting an award under the Texas Arbitration Act. *Casa Del Mar Ass'n, Inc. v. Williams & Thomas, L.P.*, 476 S.W.3d 96, 100 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.088, .091 (Vernon 2011).

Likewise, neither gross mistake nor manifest disregard of the law is a basis for vacating an arbitration award under the Federal Arbitration Act. *See* 9 U.S.C. § 10 (2012) (no mention of gross mistake or manifest disregard in grounds for vacating an arbitration award under the Federal Arbitration Act); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that grounds stated in the

Federal Arbitration Act for vacating an arbitration award are exclusive); *Casa Del Mar Assoc.*, 476 S.W.3d at 99-100.

Accordingly, regardless of whether the Texas Arbitration Act or the Federal Arbitration Act applied in this case, the trial court properly confirmed the arbitrator's award. *See Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (arbitration awards under the FAA may be vacated only under statutory grounds, which do not include manifest disregard); *Hoskins*, 2016 WL 2993929, at *5 ("[T]he TAA mandates that, *unless* a statutory vacatur ground is offered, the court *shall* confirm the award.") (emphasis in original); *Casa Del Mar Assoc.*, 476 S.W.3d at 99-101; *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.) (manifest disregard and gross mistake are not grounds for vacatur under the FAA).

Additionally, because we have concluded above that a valid and enforceable arbitration agreement covered all claims, including the C&D haul-off claims, Southwinds's argument that there was no valid arbitration agreement cannot form the basis for any manifest disregard of the law or gross mistake in applying the law on the part of the arbitrator.[7]

---

[7] Southwinds also contends, without any supporting argument or case law, that the arbitrator manifestly disregarded the law and made a gross mistake of law "in awarding attorney fees and incidental damages under the contracts without any evidence." As discussed above, neither manifest disregard nor gross mistake are grounds for vacatur under either the Texas Arbitration Act or the Federal Arbitration Act.

23

## CONCLUSION

Having concluded that a valid and enforceable arbitration agreement existed covering all claims between the parties and that Southwinds failed to demonstrate any meritorious grounds for vacatur of the arbitrator's award, we conclude that the trial court properly confirmed the award. We affirm the trial court's judgment.


/s/     William J. Boyce
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise. (Frost, C.J., concurring).