# In The

# *Court of Appeals*

# *Ninth District of Texas at Beaumont*

_____

## NO. 09-16-00035-CV
_____

## CONSTRUCTION FINANCIAL SERVICES, INC., Appellant

## V.

## SHANNON DOUZART AND MARLENE DOUZART AND PETER TOVAR D/B/A TEXAS STAR BUILDERS AND TEXAS STAR HOME BUILDERS, Appellees

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-01-00014-CV**

## MEMORANDUM OPINION

Construction Financial Services, Inc. (CFS) appeals from a final judgment that confirmed an arbitrator's award resolving its dispute with Shannon and Marlene Douzart. The Douzarts' dispute arose after CFS financed the construction of a new home with a builder, who then failed to finish the project. In three issues, CFS claims the trial court should have vacated the arbitrator's award because the arbitrator acted

1

beyond her authority in three ways, by (1) voiding the Douzarts' promissory note to CFS when the Douzarts never requested rescission as a remedy in the claims they made against CFS; (2) awarding damages to the Douzarts on their claims against both CFS and Texas Star Home Builders (Home Builders),[1] the business that agreed to build the home, because the awards, in the aggregate, created the possibility that the Douzarts would receive more than a double recovery on their claims; and (3) rendering an award that created the possibility the Douzarts might achieve a double recovery on the awards for attorney's fees. Given the limited right the Legislature has delegated to the courts to review the merits or excessiveness of an arbitrator's award, we hold that CFS has not shown the arbitrator exceeded her authority in rendering the award against CFS. Accordingly, we affirm.

## Background

In February 2013, the Douzarts signed a construction contract with Texas Star Home Builders (Home Builders) to build a new home and barn. The contract had a fixed price, and required Home Builders to complete the project for $335,700. The

---

[1] Texas Star Home Builders is the assumed business name that Peter Tovar used as the name of his construction business. For convenience, we refer to Tovar using his business's assumed name since the assumed name reinforces the fact that Home Builders was the entity that performed the work on the Douzarts' home.

obligations of the parties under the contract were contingent upon the Douzarts securing a construction loan covering the entire $335,700 price placed on the project.

Several months later, the Douzarts obtained a construction loan from CFS for $270,400, approximately $65,000 less than the fixed price established by their contract with Home Builders. Nevertheless, the Douzarts and Home Builders decided to proceed, operating under the assumption that the value of the home, when completed, would allow the Douzarts to replace their construction loan with a mortgage in an amount that covered both the construction loan and any remaining balance they owed to Home Builders.

The Douzarts, Home Builders, and CFS memorialized the arrangement that called for CFS to finance the project in a document titled "Tri-Party Financing Agreement" (the Tri-Party Agreement). The Tri-Party Agreement required CFS to release the proceeds of the $270,400 construction loan "from time to time during the term of the Construction Loan after Work has commenced and shall be solely for Work done preceding the date of request." The arbitrator found that CFS breached the agreement by releasing construction funds to Home Builders without regard to whether it had earned the progress payments. Additionally, Shannon[2] gave CFS a

---

[2] Marlene Douzart, Shannon's wife, was not a co-maker on the note that Shannon signed to finance the project.

promissory note that expressly referenced the Tri-Party Agreement. For example, the Tri-Party Agreement states the promissory note "is entitled to the benefits of the terms and conditions set forth in that certain Tri-Party Financing Agreement[.]"

The Douzarts executed a deed of trust to secure Shannon's payment of his note. The deed of trust, which includes an addendum the Douzarts signed, expressly incorporates the terms, conditions, and warranties found in the Tri-Party Agreement. The Douzarts also signed an arbitration agreement when they signed the other agreements relevant to the arrangements they made to build a new home. The arbitration agreement provides that should the parties have a dispute "relating to any agreement" they are unable to resolve, "all unresolved disputes (not limited to breach of contract action[s]) . . . shall be submitted for binding arbitration[.]"

Although Home Builders performed a substantial amount of work on the project, the project was not completed. During construction, and before the home was finished, CFS released all of the money Shannon borrowed to Home Builders without making sure that the proceeds of the loan were being spent on the Douzarts' home. In April 2014, the Douzarts sued CFS and Home Builders, alleging that they had breached the terms of their written agreements regarding the project to build the home. The Douzarts' claims included a claim against CFS for fraudulent conduct. CFS answered and filed a counterclaim against the Douzarts alleging Shannon

breached his obligation to pay the interest and principal he owed on his note. Additionally, CFS demanded that, pursuant to the arbitration agreement, the dispute be referred to arbitration. Home Builders never filed an answer to the Douzarts' suit.

Several months after answering the Douzarts' suit, CFS filed a motion to compel arbitration. The trial court granted the motion, ordering the Douzarts, Home Builders, and CFS to arbitrate "all unresolved issues[.]" Following an arbitration hearing, which included the presentation of evidence,[3] the arbitrator issued an award resolving the dispute.[4] The language in the arbitration award against Home Builders reflects that it neither responded to the notice of arbitration nor appeared in the arbitration hearing conducted on the Douzarts' claims. In its award against CFS, the arbitrator found CFS breached the Tri-Party Agreement in twelve separate ways, and found that Shannon's failure to pay his promissory note was "excused by CFS's prior material breach" of the obligations that it owed the Douzarts under the Tri-Party Agreement. The award against CFS included a damage award for $99,175,[5] an

---

[3] The appellate record does not include a transcript of the evidentiary hearing conducted by the arbitrator.

[4] The award states that the Douzarts withdrew their negligence claims and the claim that CFS violated the Texas Theft Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (West 2011 & Supp. 2017) (Texas Theft Liability Act).

[5] For convenience, the dollar amounts referenced in the opinion have been rounded to the nearest dollar.

amount that represents the interest the Douzarts paid on Shannon's loan and the out-of-pocket losses they suffered when Home Builders failed to complete their home. The arbitration award further states that "[t]he Douzarts are discharged from any further liability to CFS under the Promissory Note." The award the arbitrator signed also obligates the Douzarts to deed the property and fixtures on the project to CFS. However, the Douzarts did not prevail on all of their claims, as they were denied relief on the claims they brought against CFS "for breach of the [Deceptive Trade Practices Act], conspiracy, and fraud[.]" In a separate award, the arbitrator ordered Home Builders to pay the Douzarts damages of $406,000, which the award represents "the cost of repairing and finishing the house."

Several months after the arbitrator issued the two awards, the Douzarts filed a motion asking that the trial court confirm the awards. CFS opposed the application, and filed a motion to vacate or to modify the award the arbitrator issued against it. A few days later, the trial court issued an order that confirmed the awards and severed the causes against Home Builders and CFS into separate actions so that final judgments could be rendered on all of the claims the court sent to arbitration. After effecting a severance, the trial court rendered final judgments confirming the awards against CFS and Home Builders.

Applicable Law

We review a trial court's decision to confirm or vacate an arbitration award under a de novo standard of review. *See D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Texas law favors arbitration, and under Texas law, the review of arbitration awards is "extraordinarily narrow." *Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016) (citation omitted); *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 70 (Tex. App.—Houston [14th Dist.] 2016, no pet.). An arbitrator's award is given great deference when it is reviewed by a court, and such awards are presumed to be valid. *See Southwinds Express Constr.*, 513 S.W.3d at 70 (citing *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). Generally, even where the arbitrator has made a mistake of law or fact, courts are not allowed to vacate or modify the award. *See Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

In their briefs, both CFS and the Douzarts recognize that the Texas Arbitration Act (TAA) governs the agreement they made to arbitrate their disputes. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2011). Under the TAA, a court must confirm an arbitrator's award unless it is shown that one of a statutorily enumerated exception applies to the award. *Id*. §§ 171.087-.088. The TAA also

7

authorizes trial courts to correct or modify arbitration awards under limited circumstances, and these are also specified in the statute. *Id*. § 171.091. A reviewing court may not vacate or modify an arbitration award governed by the Texas Arbitration Act on grounds that are not in the statute. *Hoskins*, 497 S.W.3d at 494.

CFS characterizes its complaints about the trial court's decision to confirm the arbitration award against it as a matter that relates to the arbitrator's authority to render the award. The scope of authority the arbitrator has to resolve a dispute is based on the scope of the parties' arbitration agreement. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011). An arbitrator exceeds her authority if she decides a matter that lies outside the scope of the agreement. *See Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 104 (Tex. App.—Houston [1st. Dist.] 2013, no pet.). Doubts that may exist regarding the scope of an arbitration agreement must be resolved in favor of arbitration. *See Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied). The TAA authorizes courts to vacate arbitration awards if the agreement did not include the dispute that the arbitrator decided. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A). Courts may also modify awards if the arbitrator "made an award with respect to a matter not submitted to them" if the award can "be corrected

8

without affecting the merits of the decision made with respect to the issues that were submitted." *Id*. § 171.091(a)(2).

## Issue One

In issue one, CFS contends the arbitrator exceeded her authority by voiding Shannon's promissory note to CFS because the Douzarts did not seek the remedy of rescission in their pleadings. To determine the scope of the arbitrator's authority, we look to the terms of the parties' arbitration agreement. The language in the agreement to arbitrate between the Douzarts and CFS is very broad, as it covers "all unresolved disputes" arising from the agreements the parties entered into for the project. The language clearly included claims arising from any breaches of the Tri-Party Agreement, and that is the theory on which the arbitrator based the awards she allowed against CFS. *See Centex/Vestal*, 314 S.W.3d at 685 (holding that an arbitration agreement that provided the parties would arbitrate claims "'arising out of or related to the Contract'" encompassed a wide range of disputes); *Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co., Inc.,* 164 S.W.3d 438, 443-44 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (same); *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (same). In some circumstances, rescission is an available remedy when a party breaches a material term of an executory contract. *See Turner v. Turner*, No. 09-06-

9

570 CV, 2008 Tex. App. LEXIS 4720, at *6 (Tex. App.—Beaumont June 26, 2008, pet. denied) (mem. op.), *Boyter v. MCR Constr. Co.*, 673 S.W.2d 938, 941 (Tex. Civ. App.—Dallas 1984, writ ref'd n.r.e.); *Ennis v. Interstate Distributors, Inc.*, 598 S.W.2d 903, 906 (Tex. Civ. App.—Dallas 1980, no writ).

In its brief, CFS argues that the remedy of rescission was not available to the Douzarts because the Douzarts failed to seek rescission regarding the note Shannon signed in their pleadings. Additionally, CFS argues that the promissory note should not have been considered as part of the Tri-Party Agreement, the instrument that the arbitrator determined CFS had breached. CFS concludes that because a dispute over Shannon's promissory note was not within the scope of the matters that were before the arbitrator, the arbitrator exceeded her authority by ordering rescission on Shannon's note.

The agreement to arbitrate provides that "any party to the agreement(s)" may request that a dispute "relating to any agreement" or "the agreement(s)" be submitted to arbitration. The language of the arbitration agreement encompasses all of the Douzarts agreements with CFS on the project, so by implication the agreement to arbitrate encompassed any dispute over the obligations Shannon had under his note. The Tri-Party Agreement also references the promissory note, as it states the note "is entitled to the benefits of the terms and conditions set forth in" the Tri-Party

10

Agreement. The Tri-Party Agreement required CFS to advance funds to Home Builders in phases as Home Builders completed its work, less a percentage that CFS was required to retain pending the completion of the project. Under Texas law, "[d]ocuments incorporated into a contract by reference become part of that contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010).

CFS argues that the Douzarts' failure to plead a claim for rescission prevented the arbitrator from granting equitable relief. We acknowledge that a trial court (in contrast to an arbitrator) can abuse its discretion by rendering a judgment on a claim that is not included in the pleadings. *See Stoner v. Thompson*, 578 S.W.2d 679, 682-84 (Tex. 1979). According to CFS, similar pleading rules govern the forum where the arbitration occurred.

Nonetheless, a procedural error that arises from an arbitrator's alleged failure to follow the pleading rules of the forum is a matter that is beyond the limited scope we are granted to review an arbitration award. *See Forest Oil Corp.*, 446 S.W.3d at 75. The Douzarts' pleading did include a request to cancel Shannon's note, a claim that is similar but not identical to a request for rescission. And, nothing in the language of the parties' agreement to arbitrate reflects that the arbitrator could not consider granting equitable remedies such as rescission as a remedy for a breach of contract claim. Even if rescission is a remedy that expanded beyond the remedies

11

the Douzarts' requested in their pleadings, our review focuses on the authority the parties gave the arbitrator under the agreement to arbitrate. *See Nafta Traders,* 339 S.W.3d at 89-91 (explaining that when an arbitration is conducted based on an agreement between the parties, the arbitrator derives her power from the agreement to arbitrate). Therefore, we examine whether the arbitrator was authorized by the agreement to order rescission. *Id.*

The language of the agreement to arbitrate between the Douzarts and CFS is sufficiently broad to include equitable remedies. Additionally, the agreement to arbitrate provided that the arbitration would be conducted pursuant to the Better Business Bureau Rules of Arbitration. Those rules provide, in pertinent part:

> The arbitrator may award any remedy that is permitted under applicable law; provided, however, that the arbitrator may not award any remedies that the parties have agreed in writing may not be awarded in arbitration.

Significantly, the Texas Arbitration Act provides: "The fact that the relief granted by the arbitrators could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award." Tex. Civ. Prac. & Rem. Code Ann. § 171.090. CFS does not point to anything in the record that purports to be a written agreement between the parties restricting the arbitrator from fashioning an equitable remedy to cure the damages the arbitrator determined occurred when CFS breached its obligations under the Tri-Party Agreement. Given

12

the broad language in the agreement to arbitrate, the arbitrator's error, if she made one, was a mistake in the manner she applied the pleading rules governing the arbitration proceeding. We conclude that her alleged error should be characterized as either a mistake of law or of fact, so it is the type of error that lies beyond our limited scope of review. *See Forest Oil Corp.*, 446 S.W.3d at 75; *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied). Issue one is overruled.

Issue Two

In issue two, CFS argues the arbitrator exceeded her authority by extending remedies to the Douzarts that allowed them the possibility that they could recover more than the actual damages that resulted from CFS's breaches of the Tri-Party Agreement. The argument CFS makes suggests that double recovery resulted because the arbitrator cancelled Shannon's note, awarded the Douzarts damages against Home Builders based on the costs to repair a home the award required be deeded to CFS, and awarded the Douzarts $99,175 in out-of-pocket damages. "A double recovery exists when a plaintiff obtains more than one recovery for the same injury." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998).

13

Even were we to agree that the arbitrator mistakenly created the possibility that, should the Douzarts recover under both arbitration awards, a double recovery of at least some damages could occur, the trial court could not have refused the Douzarts' request to confirm the awards based on the argument that CFS made to the trial court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.090. Nothing in the record suggests the Douzarts collected anything under the award the arbitrator rendered against Home Builders. Consequently, the record now before us does not show that the Douzarts actually obtained a double recovery on any of their awards. *See Burchfield v. Prosperity Bank*, 408 S.W.3d 542, 548-49 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that an uncollected default judgment against one party did not bar collecting the damages against another party because the judgments did not represent a double recovery). Consequently, the principles of double recovery have not been shown to apply to the judgment the trial court rendered against CFS. We overrule issue two.

## Issue Three

In issue three, CFS argues the separate awards of attorney's fees to the Douzarts on their claims against Home Builders and their claims against CFS allowed the Douzarts to achieve a double recovery on their claims for attorney's fees. We disagree. The arbitration award against CFS awarded the Douzarts

14

$184,450 in attorney's fees. The arbitrator rendered a separate award against Home Builders for attorney's fees in that amount. The awards are silent with respect to whether the arbitrator intended her awards of attorney's fees to be joint and several, but the fact the awards are in the exact same amount and that both are based on the same attorney's fees affidavit requesting aggregate fees totaling $184,450 makes us doubt that the arbitrator intended to allow the Douzarts to recover more than a total of $184,450 in fees. The attorney's fee affidavit filed by the Douzarts' attorney explained that the fees he sought were based on the time expended on the matter by the members of his firm in pursuing the case against both Home Builders and CFS. While the fees identified in the affidavit are not properly segregated as between CFS and Home Builders, the affidavit makes it clear that the Douzarts were seeking an aggregate award for attorney's fees, not a cumulative award of twice the amount supported by the affidavit signed by their attorney.

On this record, there is nothing to suggest the Douzarts have actually collected on the attorney's fees award they received against Home Builders. Because CFS failed to show that the separate awards of attorney's fees have actually resulted in a double recovery, the trial court, for this reason, could have decided to confirm the awards. *See Burchfield*, 408 S.W.3d at 548-49.

Finally, CFS complains the trial court improperly modified the award of attorney's fees to make the awards joint and several. Relying on *Broemer v. Houston Lawyer Referral Service*, CFS argues that the trial court was not authorized to modify the attorney's fee award to impose joint and several liability on CFS for attorney's fees. 407 S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2013, no pet.). However, the error identified in *Broemer* was that the trial court imposed joint and several liability on a party when the arbitrator, in the arbitration award, found the individual had no personal liability. *Id*. Therefore, the modification the court imposed in *Broemer* was a modification that affected the merits of the controversy because it created liability on one of the parties to the case when the arbitrator had found that party not liable. *Id*.

By modifying the attorney's fee awards to make them joint and several, the trial court prevented the possibility of a double recovery. Thus, given that the Douzarts filed an attorney's fee affidavit that reflects they were seeking only $184,450 in attorney's fees, we conclude the modification is one that did not affect the merits of the controversy. By making the attorney's fee award joint and several, the judgment clarified the award by making it clear the Douzarts may collect a total of only $184,450 in attorney's fees against Home Builders and CFS. In this case, we conclude the attorney's fees were awarded in an imperfect manner, and the trial court

16

properly corrected the awards without affecting the merits of the arbitrator's decisions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.091(B)(3) (allowing a court to modify an arbitration award if the form of the award is imperfect in a manner that does not affect the merits of the controversy).

We overrule issue three. Because we have concluded that the arbitrator acted within her authority when she rendered her awards, we hold the trial court was required by the TAA to confirm the awards. Accordingly, we affirm the final judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on July 5, 2017
Opinion Delivered February 28, 2018

Before McKeithen, C.J., Kreger and Horton, JJ.

17