

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00286-CV

Margaret Landen **SAKS** and Philip M. Ross,
Appellants

v.

Marcus P. **ROGERS**, A. Chris Heinrichs, J. Barrett Shipp, and Heinrichs & De Gennaro, P.C.,
Appellees

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2011-PC-3466B
Honorable Kelly Cross, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  July 26, 2017

AFFIRMED

This appeal stems from the probate court's entry of final judgment confirming an arbitration award. The judgment also included a monetary sanction award against Appellant Philip M. Ross. On appeal, Appellants assert the probate court erred in the following: (1) granting Appellees' motion to abate and compel arbitration; (2) overruling Appellant Margaret Landen Saks's motion to overrule objections to arbitration; (3) compelling arbitration on claims not within the scope of the arbitration agreement; (4) entering judgment on the arbitrator's sanction order;

and (5) entering the order confirming award of final judgment.  We affirm the probate court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The original lawsuit, from which this case arises, was filed in 2011.  Several appeals pending from the initial lawsuit have been before this court.  Because this current appeal involves factual allegations from the previous causes, a rather lengthy factual background is set forth.

**A.**   **Previous Appeal:** *Davis v. Merriman*, **Nos. 04-13-00518-CV, 04-13-00875-CV, 2015 WL 1004357 (Tex. App.—San Antonio Mar. 4, 2015, pet. denied)**

On January 2, 1991, Sandra C. Saks created the Saks Children Family Trust a/k/a ARFL&L benefitting her children, Gloria Lauren Nicole Saks (Lauren) and Margaret Landen Saks (Landen).  Twenty years later, on August 17, 2011, Lauren filed suit against the trustee, Diane Flores, alleging breach of fiduciary duty and failure to comply with the trust agreement.  Lauren sought an accounting, constructive trust, and the removal of the trustee.  On December 21, 2011, the trustee ordered the trust dissolved.  A week later, on December 28, 2011, an interim trustee, Marcus Rogers, was appointed by the probate court; the interim trustee concluded that any attempt by the original trustee to terminate the trust was ineffective.

On April 2, 2012, the parties entered into a mediated settlement agreement (MSA) which included an arbitration agreement for "disputes aris[ing] with regard to the interpretation and/or performance of [the MSA] or any of its provisions, including the form of further documents to be executed . . . ."  Although not present at the mediation, Landen provided Lauren a power of attorney to act on her behalf for the MSA.  On May 8, 2012, the probate court signed an order approving the MSA and authorizing the interim trustee to sign the MSA.

On August 21, 2012, Lauren filed a motion to compel arbitration.  In that motion, Lauren asserted that matters regarding the interpretation and performance of the MSA remained

unresolved. After a failed attempt at a court-ordered mediation, the matter was heard before an arbitrator on October 18, 2012. The arbitrator entered findings of fact, specifically that the parties to the MSA included Lauren, Landen, the original trustee, Sandra, and the interim trustee.[1] The arbitration award ordered Sandra and the original trustee to execute certain documents conveying to the trust all of their rights, title, and interests in certain property "no later than October 31, 2012." On May 7, 2013, the probate court signed the final judgment confirming the arbitrator's award and entered the award as the judgment of the court.

On August 16, 2013, the probate court granted Appellee Shipp's motion to enforce the probate court's May 7, 2013 order. The probate court ordered Sandra and Landen to execute and deliver several conveyance agreements set out in the arbitration award.

On August 16, 2013, Landen filed an objection to the application for the order enforcing judgment in which she asserted (1) she was not a party to the lawsuit, (2) the probate court had lost plenary power, and (3) the judgment was insufficient to serve as proof of title. More specifically, Landen averred the only parties to the MSA were Lauren, Sandra, and the original trustee. Landen asserted that she was not a party to either Lauren's lawsuit or to the MSA; she further contended her "approval" to the MSA was signed by Lauren's attorney, A. Chris Heinrichs, under apparent authority of a limited power of attorney prepared by Heinrichs, who was not

---

[1] Paragraph 25 of the Arbitrator's Findings and Final Award, dated April 2, 2012, provided as follows:

25) The MSA provides for the payment of fees and expenses of Heinrichs & De Gennaro, P.C. as part of the Parties' agreement. In this regard, the following findings apply:
a) Landen granted her sister, Lauren, the authority to act on Landen's behalf in the Mediated Settlement Agreement which took place on April 2, 2012 under a Limited Special Power of Attorney, a true and correct copy of which is part of the arbitration record as Exhibit 5;
b) Landen did not revoke the power of attorney prior to April 2, 2012, or prior to actual written approval of the MSA as reflected in Exhibit 6;
c) Landen is bound to the undertaking in the MSA;
d) Landen ratified the MSA by her subsequent written approval of it as shown in Exhibit 6;
e) Landen's attempted revocation of her consent to the terms of the MSA conflicts with the terms of the MSA which specifically provides it is not revocable; thus, Landen is bound to the terms of the MSA.

Landen's attorney. Landen conceded that she signed a limited power of attorney designating Lauren, as her attorney in fact, and authorizing Lauren to settle the pending litigation in Landen's best interest. Landen argued, however, that she was misled by Lauren's attorneys, Heinrichs and Barrett Shipp, who drafted the power of attorney and advised her to sign it. Landen also contended that Heinrichs and Shipp negligently misrepresented that it was in Landen's best interest to sign the power of attorney and to agree to the terms of the MSA. When Landen sought the advice of an attorney of her choice, she discovered that, after the trust was dissolved, the MSA provided for payment of hundreds of thousands of dollars for attorney's fees and ad litem fees from the trust assets.

On June 17, 2013, the probate court ordered Sandra and Landen to execute and deliver four conveyance documents, no later than October 4, 2013. When Sandra and Landen failed to comply, the interim trustee filed a motion to enforce orders and execute conveyance documents. On November 14, 2013, the probate court signed an order in aid of enforcement of judgment, finding that Sandra and Landen failed to comply with the arbitration award and probate court's judgment by failing to execute the court-ordered documents.

Landen appealed the probate court's order in aid of enforcement. In her brief Landen argued: (1) the probate court lacked subject matter jurisdiction to compel Landen to convey her interests; (2) the probate court lost plenary power prior to the entry of judgment; and (3) the probate court's order in aid of enforcement was void. Landen did not appeal the arbitrator's finding that she was a party to the MSA. On March 4, 2015, this court affirmed the probate court's order in aid of enforcement. *See Davis v. Merriman*, Nos. 04-13-00518-CV, 04-13-00875-CV, 2015 WL 1004357, at *6 (Tex. App.—San Antonio Mar. 4, 2015, pet. denied).

**B.     Current Appeal**

On March 19, 2014, pending this court's opinion regarding the probate court's order in aid of enforcement, Landen filed an original petition against Heinrichs and his law firm, Heinrichs & De Gennaro, P.C., Shipp, and Rogers (the interim trustee). In her petition, Landen alleged negligent representation, fraudulent inducement, conspiracy, and fraudulent claim against real property. The defendants filed a motion to abate and to compel arbitration. In her response, Landen asserted, inter alia, she was not a party to the MSA, she did not agree to the arbitration, her claims were not disputes between the parties to the MSA, and because the MSA did not require Landen to convey or assign her interests in the partnerships or ventures, her current claims were not related to an interpretation or enforcement of the MSA.

On June 4, 2015, following a hearing on the motion to abate and compel arbitration, the probate court made the following findings of fact:

(1) Margaret Landen Saks was a party to the Mediated Settlement Agreement dated April 2, 2012, by way of a Power of Attorney given to her sister Lauren Saks and in her appearance in subsequent enforcement hearings and in her appeal regarding the arbitration issues arising out of the same MSA;

(2) Landen Saks now claims a conspiracy in procurement of the [power of attorney], negligent misrepresentation, fraudulent inducement and other acts and omissions by A. Chris Heinrichs, Marcus P. Rogers, J. Barrett Shipp and Heinrichs & De Gennaro, P.C.;

(3) The issue before the Court is whether the claims against A. Chris Heinrichs, Marcus P. Rogers, J. Barrett Shipp and Heinrichs & De Gennaro, P.C. are within the scope of the MSA;

(4) Landen Saks's claims against Marcus Rogers arise from, are clearly interwoven with and factually intertwined matters that have a significant relationship to the MSA; and

(5) Landen Saks's claims against A. Chris Heinrichs, J. Barrett Shipp and Heinrichs & De Gennaro, P.C. are also factually intertwined with the MSA and have a significant relationship to the MSA.

The probate court granted the motion to abate and compel arbitration.

On December 22, 2015, attorney Philip Ross represented Landen during a telephonic conference with the arbitrator. The arbitrator ordered Landen "to appear for such deposition in San Antonio before January 31, 2016." After Ross failed, or refused, to provide a date for Landen to appear for her deposition, the arbitrator noticed a telephonic conference on January 18, 2016.

During the January 18, 2016 conference, Ross again represented Landen. Following arguments of counsel, the arbitrator ordered Landen to appear for her deposition, in person, at the Law Offices of Attorney Royal Lea, on January 25, 2016.

On January 24, 2016, Ross notified the arbitrator that he did not expect Landen to appear. The arbitrator ordered Ross to appear at the deposition regardless of whether Landen would be attending the deposition; a telephonic conference was ordered for morning of January 25, 2016. The following morning, on January 25, 2016, Ross informed the arbitrator, for the first time, that he had a hearing in court and would not appear at Mr. Lea's office; neither Landen nor Ross appeared for deposition or contacted the arbitrator as ordered. Additionally, Landen failed to respond or comply with the arbitrator-ordered discovery requests that were due on January 29, 2016.

The arbitrator requested dates for a hearing to address sanctions against Landen for her failure to attend the oral deposition or otherwise participate in discovery. On February 9, 2016, Ross emailed the arbitrator that he was available to attend the hearing on February 19, 2016. The hearing was scheduled for February 19, 2016. On February 18, 2016, Ross notified the arbitrator, by email, that neither he nor Landen would attend the February 19, 2016 hearing or any other conference or proceeding on this case.

On February 19, 2016, a hearing was held before the arbitrator. All parties, either individually or through counsel, received notice. Neither Landen nor her attorney attended the hearing. On February 25, 2016, the arbitrator entered the following findings:

- Landen was the claimant in this case and initiated the proceedings;

- Landen's claims are unquestionable about interpretation or enforcement of the MSA and are subject to the arbitration clause;

- Landen and her attorney completely failed to participate in the process of exchanging information before the hearing on the merits to allow the parties a meaningful opportunity to obtain discovery; and

- Landen's refusal to participate denied the parties the opportunity to review the evidence supporting Landen's claims in advance of the arbitration and to prepare a defense against the asserted claims.

As a sanction, the arbitrator concluded in its order, "it is appropriate that [Landen] be prohibited from offering or presenting any evidence in support of her claims in this case."

On March 30, 2016, the probate court entered an order confirming the February 25, 2016 arbitrator's order; the probate court further imposed and confirmed the sanctions awarded by the arbitration order. The probate court further imposed $20,000.00 in sanctions, payable to Appellees, for vexatiously multiplying the litigation in this cause to the detriment of Appellees.

On April 6, 2016, following the arbitration conducted the previous day, the arbitrator issued an award that Landen take nothing in her claims against Heinrichs, Shipp, Heinrichs & De Gennaro, P.C., and Rogers.[2]

Landen filed a motion in opposition to the arbitration award asserting the arbitrator lacked jurisdiction to hear the matter. On April 11, 2016, the probate court entered an order confirming the arbitrator's April 6, 2016 award and for entry of final judgment; the probate court further ordered that the court's order of March 30, 2016, that "Marcus Rogers, J. Barrett Shipp, A Chris Heinrichs and Heinrichs & De Gennaro, P.C., jointly and severally shall recover judgment of $20,000 (Twenty Thousand Dollars) from Philip [Martin] Ross a/k/a Philip Ross continues to be the order of this court." This appeal ensued.

---

[2] Appellees Heinrichs, Shipp, and Heinrichs & De Gennaro, P.C. were further awarded $82,758.18 from Landen based on their counterclaim.

## STANDARD OF REVIEW

An appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard. *City of San Antonio v. Cortes*, 468 S.W.3d 580, 583 (Tex. App.—San Antonio 2015, no pet.). Under this standard, we defer to the trial court's factual determinations if they are supported by the evidence and review its legal determinations de novo. *In re Labatt Food Serv.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Cortes*, 468 S.W.3d at 583. "Thus, the existence and the applicability of an arbitration agreement is a question of law reviewed under a de novo standard." *Cortes*, 468 S.W.3d at 583.

## ARBITRABILITY

In her first three issues on appeal, Landen contends that because her claims were not within the scope of the MSA, the probate court's order granting Appellee's motion to abate and to compel arbitration, and overruling her objections thereto, were in error.

### A.      Motion to Compel Arbitration

The arbitration agreement in question is governed by the Texas Arbitration Act (TAA). *Davis v. Merriman*, 2015 WL 1004357, at *2 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 171.001-.098 (West 2011)). A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a); *G.T. Leach Bldrs., LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (orig. proceeding); *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding); *Cortes*, 468 S.W.3d at 583. The party who seeks to compel arbitration bears the burden to prove the existence of the arbitration agreement; generally, this requires establishing proof of a contractual right to that remedy. *See AdvancePCS Health*, 172 S.W.3d at 605.

The burden then shifts to the party opposing arbitration to establish some ground upon which to nullify the arbitration agreement. *See id.* at 607; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "[O]rdinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding). As such, courts treat arbitration agreements like other contracts terms when applying legal rules of interpretation. *See id*. Only defenses relating solely to the arbitration clause, not the contract as a whole, are applicable. *See FirstMerit Bank*, 52 S.W.3d at 756 ("[I]f they are to defeat arbitration," defenses "must relate specifically" to arbitration provisions; "[d]efenses that pertain to the entire . . . contract can be arbitrated.")). Absent evidence supporting a defense to the arbitration, the trial court must compel arbitration. *See J.M. Davidson*, 128 S.W.3d at 227.

## B.  Mediated Settlement Agreement

Landen concedes the validity of the MSA's arbitration agreement. The arbitration agreement contained within the MSA provides as follows:

> If one or more disputes arise with regard to the interpretation and or performance of this Agreement or any of its provisions, including the form of further documents to be executed, the Parties agree to further mediation in an attempt to resolve same with Thomas Smith, the Mediator[] who facilitated this settlement. In the event a dispute arises between the Parties, it is hereby agreed that the dispute shall be referred to Thomas Smith, the Mediator herein, for arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration.

"A broad arbitration clause, purporting to cover all claims, disputes, and other matters arising out of or relating to the contract or its breach, creates a presumption of arbitrability." *Am. Realty Trust, Inc. v. JDN Real Estate–McKinney, L.P.*, 74 S.W.3d 527, 531 (Tex. App.—Dallas 2002, pet. denied); *see also FD Frontier Drilling, Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (noting that, "[g]enerally, when an arbitration provision uses the language 'any dispute,' it is considered broad," and that "[s]uch clauses are capable of

expansive reach."); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.) ("'The phrase 'relates to,' in particular, is recognized as a very broad term.'") (quoting *In re Wilmer Cutler Pickering Hale & Dorr LLP*, No. 05–08–01395–CV, 2008 WL 5413097, at *4 (Tex. App.—Dallas Dec. 31, 2008, orig. proceeding) (mem. op.)).

We conclude that the use of the language "disputes arise with regard to the interpretation and or performance *of this Agreement or any of its provisions*," speaks to the broad nature of the arbitration agreement; it is not limited to claims that literally arise under the agreement, but instead embraces all disputes between the parties that have a significant relationship with the agreement. *See Am. Realty Trust, Inc.*, 74 S.W.3d at 531; *FD Frontier Drilling, Ltd.*, 438 S.W.3d at 695; *RSR Corp.*, 309 S.W.3d at 701.

We, thus, turn to whether Landen's claims, as alleged in her original petition, fall within the scope of that agreement.

## C. Landen's Factual Allegations

"To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of actions asserted." *First Merit Bank*, 52 S.W.3d at 754. Any doubt about the scope of the agreement must be resolved in favor of arbitration. *See id.*; *see also Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding) (concluding courts should not deny a motion to compel arbitration unless the arbitration clause in the parties' agreement is not susceptible of an interpretation that is sufficiently broad so that it includes the matters at issue in a dispute). In other words, "[i]f the allegations underlying the claim touch upon matters covered by the agreement, then the claim is subject to arbitration regardless of the legal label attached to it." *United Parcel Serv., Inc. v. McFall*, 940 S.W.2d 716, 719 (Tex. App.—Amarillo 1997, no pet.); *accord City of Laredo v. Mojica*, 399 S.W.3d 190, 195 (Tex. App.—San Antonio 2012, pet. denied). "Any doubts

concerning the scope of what is arbitrable should be resolved in favor of arbitration." *Mojica*, 399 S.W.3d at 195 (citing *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.)); *see also McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding courts may not deny arbitration if the arbitration agreement is susceptible to an interpretation that would cover the dispute at issue).

Focusing on the facts alleged by Landen, her petition alleges, inter alia:

(1)     Following the trust's termination, Landen communicated "weekly, if not daily" with Appellees "about the Trust and/or anticipated mediation of Lauren's lawsuit;"

(2)     After several requests, Landen executed a power of attorney, drafted by Shipp, "authorizing Lauren to represent Landen regarding mediation and settlement of Lauren's case;"

(3)     None of the Appellees "disclosed in writing to Landen of any and all known or potential conflicts of interest associated with the power of attorney, Lauren's case or the prospective mediation . . . [or] otherwise advised Landen to seek advice from another attorney before signing the power of attorney;"

(4)     Pursuant to the mediated settlement agreement, and without disclosing their intentions to Landen, Appellees "intended to be paid by the Trust" and "acquire Landen's interests in properties for the Trusts;"

(5)     Landen's consent to the power of attorney was acquired through a conspiracy by Appellees;

(6)     Landen's consent to the power of attorney was obtained through Appellees' fraudulently inducing her agreement by negligent or intentional misrepresentation."

Landen asserts the Appellees intended to be paid by the Trust, the subject of the mediated settlement agreement, pursuant to the mediated settlement agreement. *See Gerwell v. Moran*, 10 S.W.3d 28 (Tex. App.—San Antonio 1999, no pet.) (analyzing claims for breach of the assignment agreement, breach of fiduciary duty, fraud, fraudulent inducement, and unjust enrichment stemming from an arbitration agreement contained in a partnership agreement); *In re Bath Junkie*

*Franchise, Inc.*, 246 S.W.3d 356 (Tex. App.—Beaumont 2008, orig. proceeding) (analyzing claims of breach of franchise termination agreement, fraud, and conspiracy).

"Claims generally are arbitrable when the facts alleged 'touch matters' that are covered by, have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that contains the arbitration provision." *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 74 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding). If the facts alleged "stand-alone" and are completely independent of the contract, the asserted cause of action is not subject to arbitration. *See Pennzoil Co.*, 30 S.W.3d at 498.

In *Gerwell*, 10 S.W.3d at 32, this court concluded that because the arbitration agreement was contained within the partnership agreement, and determination of the plaintiff's claims necessarily required a review of the partnership agreement to calculate the purchase price of her partnership interest, the dispute "relate[d] to or touche[d] upon the [partnership] agreement." Similarly, in *Bath Junkie Franchise, Inc.*, 246 S.W.3d at 366, the arbitration agreement was contained within the franchise agreement, and the plaintiff alleged a breach of the termination agreement, fraud, and conspiracy. The appellate court concluded that the plaintiff's claims stemmed from the franchise agreement and necessarily required an analysis of the franchise agreement; therefore, in light of the broad language contained within the arbitration agreement, the dispute arose from and was "related to" the parties' relationship set forth in the franchise agreement. *Id.*

The present case is no different. The MSA's primary goal was the execution of documents regarding properties owned by the trust. At the heart of Landen's dispute is the distribution of the trust's corpus. In the previous appeal, Landen did not dispute the probate court's order that she was a party to the MSA. *See generally Davis*, 2015 WL 1004357. Whether a conflict of interest

exists regarding Appellees' procurement of Landen's power of attorney turns on any benefits Appellees might receive under the MSA. *See Gerwell*, 10 S.W.3d at 32; *Bath Junkie Franchise, Inc.*, 246 S.W.3d at 366. Similarly, whether any payment of monies to Appellees, under the MSA, involved elements of fraud also requires an evaluation of any monies owed under the MSA or the distribution of benefits stemming from the MSA. *See Gerwell*, 10 S.W.3d at 32; *Bath Junkie Franchise, Inc.*, 246 S.W.3d at 366. The probate court's order, about which Landon complains, required her to execute documents under the trust.

We conclude Landen failed to prove that her claims stand-alone from the MSA and that they are not "'inextricably enmeshed' with, or are 'factually intertwined'" with the MSA and distributions from the trust. *See First Merit Bank*, 52 S.W.3d at 754; *see also Southwinds Express Constr.*, LLC, 513 S.W.3d at 74; *Pennzoil Co.*, 30 S.W.3d at 498. We, therefore, conclude that Landen's claims are connected to and arise from the MSA.

We next turn to whether Landen's claims based on fraud are outside the scope of the arbitration agreement.

**D.    Fraud**

Allegations of fraud that are related to the arbitration clause itself are properly addressed by the trial court; any issue of fraud related to the broader contract is properly determined by the arbitrator. *FirstMerit Bank*, 52 S.W.3d at 758. To prove fraud, the record must clearly evidence the fraudulent representations were related specifically to the arbitration provision, as opposed to the entire engagement agreement. *See id.* (there was "no evidence that the sellers actually misrepresented the [arbitration] Addendum's terms, or that they made any false material representations with regard to the Arbitration Addendum itself"); *accord Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 864 (Tex. App.—Dallas 2010, no pet.);

*Fogal v. Stature Const., Inc*., 294 S.W.3d 708, 720 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Landen's causes of action all stem from allegations that Appellees fraudulently induced her to sign the power of attorney. Landen's fraud allegations thus extend to the entire MSA, not solely to the arbitration clause within the MSA. While fraud in the inducement of the arbitration clause itself is not subject to arbitration, Landen alleged fraudulent acts relate to the entire agreement and the dispute must be decided by the arbitrator. *See Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 236 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

Landen next contends that Appellees, as non-signatories to the MSA, could not compel arbitration under the MSA.

**E.      Non-Signatory to an Arbitration Agreement**

"Generally, only signatories to an arbitration agreement are bound by the agreement." *Elgohary v. Herrera*, 405 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see Labatt Food Serv.*, 279 S.W.3d at 642–43 (explaining Texas procedural rules and substantive law apply in determining whether nonsignatories are bound by an arbitration agreement). Equitable estoppel allows a non-signatory to compel arbitration if the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the non-signatory. *See Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739; *In re Hartigan*, 107 S.W.3d 684, 691 (Tex. App.—San Antonio 2003, orig. proceeding). Under certain circumstances, a party to an arbitration agreement may be compelled to arbitrate claims with a nonparty if the controversy arises from a contract containing an arbitration clause. *See Meyer v. WMCO–GP LLC*, 211 S.W.3d 302, 305 (Tex. 2006); *In re Palm Harbor Homes, Inc*., 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding); *see also In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 760 (Tex. 2006) (orig. proceeding).

As the Texas Supreme Court explained in *Meyer v. WMCO-GP, LLC*, 211 S.W.3d at 306–07, "[t]he phrase 'between the parties,' without more, suggests only that [the parties] meant to ensure that the agreement applied to disputes between them, not that they intended to preclude the application of equitable estoppel." This court previously upheld the probate court's determination that Landen was a party to the MSA. Landen's causes of action rest on Appellees' involvement in procuring the power of attorney utilized by Lauren to bind Landen, and her interests, to the MSA. Landen's status as a party to the MSA is vested within Lauren's signature pursuant to the power of attorney. While all claims touching the MSA may not be included, Landen's claims clearly derive from Appellees' actions during the formation of the MSA. Thus, the basis for the MSA, the benefits received or provided by parties stem directly from the MSA, and the circumstances surrounding the procurement of the power of attorney and its application to bind Landen to the MSA all derive from an interpretation of the MSA and its provisions.

Therefore, resolving any doubt in favor of arbitration, we conclude Appellees, even as non-signatories to the MSA, can compel arbitration of Landen's claims. *See Meyer*, 211 S.W.3d at 305; *Palm Harbor Homes*, 195 S.W.3d at 678; *Vesta Ins. Group, Inc.*, 192 S.W.3d at 760. Accordingly, we conclude the probate court did not err in determining Appellees could compel the arbitration.

We now turn to Landen's due process issues.

## DUE PROCESS

In her last two issues on appeal, Landen contends (1) she was denied due process regarding the arbitrator's February 25, 2016 sanctions order, and (2) the probate court's April 11, 2016 entry of order confirming final judgment denied her due process rights, including her right to a jury trial.

**A.      Due Process within the Arbitration Proceedings**

The record reflects that Landen had notice of the arbitration proceedings, including the February 19, 2016 hearing before the arbitrator, and the April 11, 2016 hearing before the probate court.  "Parties in an arbitration proceeding have due process rights to notice and a meaningful opportunity to be heard." *Ewing v. Act Catastrophe-Tex. L.C.*, 375 S.W.3d 545, 551 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 729 (5th Cir. 1987)).  Landen does not claim that she did not have notice of the arbitration hearing; rather, she complains she was denied a full hearing before the court and the right to introduce evidence at a meaningful time and in a meaningful manner.

"The Due Process Clause does not mandate the parties be heard at the arbitration hearing; rather, the Due Process Clause requires that the parties be given a meaningful opportunity to be heard at the arbitration hearing." *See id*. at 551–52; *Univ. of Tex. Med. School v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).  Due process generally requires that notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Due process is satisfied when notice procedures are followed in compliance with the rules under which the parties agreed to be bound.  *See id*.; *see also Ying Chun Tan v. Hung Pin Lee*, No. 14–06–00319–CV, 2007 WL 582084, at *4 (Tex. App.—Houston [14th Dist.] Feb. 27, 2007, no pet.) (mem. op.).  "If a party's absence at the arbitration hearing is the result of her decision not to attend, there is no due process violation." *Ewing*, 375 S.W.3d at 552.

Judicial review of an arbitration award "is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied); *see also D.R. Horton–Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—

Houston [14th Dist.] 2014, pet. denied) (an arbitrator does not exceed her authority by committing a mistake of law, but instead by deciding a matter not properly before her). Arbitrators "exceed their powers when they decide matters not properly before them." *Pheng Investments, Inc. v. Rodriquez*, 196 S.W.3d 322, 329 (Tex. App.—Fort Worth 2006, no pet.).

Here, the record clearly shows Landen elected not to participate. Having already determined Landen was a party to the MSA, she agreed to be bound by a particular set of rules, and notice was provided in accordance with such rules. *See Ewing*, 375 S.W.3d at 552. Landen received notice; after the parties agreed on available dates, Landen's attorney affirmatively stated Landen would not be participating. Having concluded Landen was properly compelled to arbitrate, and that she received proper notice of the hearing before the arbitrator and decided not to attend, we cannot say the arbitrator's imposition of sanctions was not a matter properly before the arbitrator. Landen, therefore, failed to show that she was deprived of a meaningful opportunity to be heard in the arbitration proceeding or any violation of her due process rights.

**B.       Denial of Right to a Jury Trial in Proceedings before the Probate Court**

In her final issue on appeal, Landen contends the probate court's April 11, 2016 entry of order confirming final judgment deprived her of her right to a jury trial and therefore denied her due process. Landen's brief provides no authority supporting her contention that the probate court's order confirming the arbitration award mandates a jury trial. *See* TEX. R. APP. P. 38.1(i) (providing that appellate arguments must be supported by appropriate citations to authorities). Moreover, having already determined Landen was subject to arbitration pursuant to the MSA, she waived her right to a jury trial when she agreed to have the dispute resolved through arbitration rather than a judicial proceeding. *See Massey v. Galvan*, 822 S.W.2d 309, 318 (Tex. App.— Houston [14th Dist.] 1992, writ denied) ("It is clear that when a party agrees to have a dispute resolved through arbitration rather than judicial proceeding, that party has waived its right to a jury

trial."); *accord Serna v. Int'l Bank of Commerce*, 357 S.W.3d 89, 93 (Tex. App.—San Antonio 2011, no pet.); *In re Wells Fargo Bank Minnesota N.A.*, 115 S.W.3d 600, 607 (Tex. App.— Houston [14th Dist.] 2003, orig. proceeding). Having previously determined the probate court properly concluded Landen was a party to MSA and the probate court did not err in compelling arbitration, we conclude that Landen waived her right to a jury trial.

Accordingly, we overrule her final issue on appeal and address Roger's request for sanctions based on a frivolous appeal.

### FRIVOLOUS APPEAL

Rogers, the interim trustee, contends this appeal is frivolous and asks this court to sanction appellants pursuant to Texas Rule of Appellate Procedure 45. *See* TEX. R. APP. P. 45 (appellate court may award prevailing party just damages if it determines appeal is frivolous). To determine if an appeal is frivolous, we apply an objective test, review the record from the appellant's point of view, and decide whether he had reasonable grounds to believe the judgment could be reversed. *Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing & Remodeling Co.*, 940 S.W.2d 150, 155 (Tex. App.—San Antonio 1996, no writ). "To justify sanctions, we must determine that the appeal was taken for delay only and without sufficient cause." *Id.* Appellate courts are urged to "exercise prudence and caution and use careful deliberation." *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also Lance v. Robinson*, No. 04-12-00754-CV, 2013 WL 820590, at *5 (Tex. App.—San Antonio Mar. 6, 2013, no pet.) (reiterating sanctions only imposed in "truly egregious" circumstances). After full consideration of both the sanctions' request and the entire appellate record from the appellants' point of view, we deny Appellee Roger's request for sanctions. *See* TEX. R. APP. P. 45.

## CONCLUSION

Having overruled each of Landen's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice