

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00204-CV

_____

MID-AMERICA APARTMENTS, L.P. D/B/A COLONIAL VILLAGE AT
WILLOW CREEK APARTMENTS, Appellant

V.

TRAVIS TROJAN AND CAMMY NULL, Appellees

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2021-002043-1

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.  Introduction

In a single issue, Mid-America Apartments, L.P. d/b/a Colonial Village at Willow Creek Apartments (Landlord) challenges the trial court's denial of its motion to compel the claims of Travis Trojan and Cammy Null (Tenants) to arbitration.  We sustain Landlord's argument that Tenants' claims fall within the scope of an arbitration agreement in a Texas Residential Lease Agreement (Lease) that they executed.  We, however, reject Landlord's contention that an attorney's fee provision in the Lease is not unconscionable; that provision conflicts with Tenants' statutory rights under the Texas Deceptive Trade Practices Act (DTPA).  But we remedy that flaw by severing the fee provision from the Lease and otherwise upholding the arbitration scheme of the Lease.  Thus, we conclude that the trial court erred by refusing to compel Tenants' claims to arbitration.  Accordingly, we reverse and remand.

## II.  Factual and Procedural Background

Tenants executed the Lease to rent an apartment from Landlord.  Claiming that Landlord had wrongfully entered the apartment after Tenants had defaulted on the rent due, Tenants sued Landlord.  The operative facts alleged in Tenants' petition are as follows:

> 3.  On or about March 6, 2020, [Tenants] entered into a Lease Agreement with [Landlord] for the lease of an apartment located at 2801

2

Airport Freeway in Bedford, Tarrant County, Texas. This agreement called for a one[-]year lease of the premises in question.

4. Due largely to [the] COVID-19 pandemic quarantine, [Tenant] Travis Trojan lost his job in December of 2020. [Tenants] were unable to pay their rent for the month of January[] 2021. [Landlord] notified [Tenants] that they were in default under their Lease Agreement[] and that they should vacate the premises. However, [Landlord] did not legally evict [Tenants] from the premises.

5. On or about February 5, 2021, [Tenant] Trojan returned to the premises, only to find that [Landlord], through its agents, had removed virtually every single item in the apartment. Such actions constituted a breach of the Lease Agreement by [Landlord], as well as a criminal act. At the time of the wrongful and illegal and criminal actions of [Landlord], [Tenants] were entitled to lawful occupancy of the premises, despite the fact that they were delinquent in their rent.

Predicated on these factual allegations and after describing the items of personal property allegedly removed from the apartment, Tenants pleaded that Landlord had violated the Texas Property Code in an unspecified manner and had also violated the DTPA in an unspecified manner.

Landlord answered Tenants' suit and pleaded an affirmative defense that Tenants' "claims [were] barred due to the existence of an enforceable arbitration agreement." On the day it filed its answer, Landlord also filed a motion to compel arbitration and to dismiss all claims.

The motion to compel arbitration quoted the following arbitration provision in the Lease: "**ALL CLAIMS THAT ARISE BETWEEN YOU [(TENANTS)] AND LANDLORD WILL BE RESOLVED THROUGH BINDING ARBITRATION IN ACCORDANCE WITH THE FAA AND THE RULES.**

3

**YOU AND LANDLORD AGREE AND UNDERSTAND THAT WE MUTUALLY CHOOSE BINDING ARBITRATION INSTEAD OF LITIGATION TO RESOLVE ALL CLAIMS**." The motion also referenced the expansive definition of "claim" set out in the Lease, which we will quote in detail below.

Tenants responded to the motion with two challenges to Landlord's assertion that their claims were arbitrable. First, they parsed the Lease's arbitration provision and definition of "claim":

> The claims herein relate to [Landlord's] theft and wrongful disposition of [Tenants'] personal property. They do not relate to the Lease. Indeed, the actions in question took place <u>after</u> the [L]ease had been terminated. They do not relate to the "Property" which is defined in the [L]ease as the apartment complex. . . . They do not relate to [Tenants'] apartment or common areas[] but [to] the personal property *in* the apartment (a distinction not addressed in this provision in any way). And it does not involve a relationship resulting from the [L]ease. Rather, it involved the relationship between [Tenant Trojan] and his personal property.

Second, Tenants claimed that the arbitration provision was unconscionable because it provided for a broader recovery of attorney's fees than that permitted under the DTPA.

Landlord, in turn, responded to Tenants by arguing that the question of whether the claims made were arbitrable fell to the arbitrator and not to the trial court, that Tenants' claims clearly fell with the arbitration provision and the definition of "claim," and that the arbitration provision was not unconscionable.

4

In a one-sentence order, the trial court denied the motion to compel arbitration. Neither side requested findings of fact and conclusions of law. Landlord perfected this interlocutory appeal.

### III.  Standard of Review

We generally review an order denying a motion to compel arbitration under an abuse-of-discretion standard but break down that review into discrete components. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding). "[W]e defer to the trial court's factual determinations that are supported by evidence but review the trial court's legal determinations de novo." *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). Specifically, we review the question of the enforceability of an arbitration agreement de novo. *Id.*

We follow a three-step process to determine whether a claim is arbitrable:  we assess (1) whether an arbitration provision is present, (2) whether the claim falls within the ambit of the provision, and (3) whether the party opposing arbitration has proved a defense to enforcement. *Friedman & Feiger, LLP v. Massey*, Nos. 02-18-00401-CV, 02-18-00402-CV, 2019 WL 3269325, at *3 (Tex. App.—Fort Worth July 18, 2019, pet. denied) (mem. op. on reh'g). Should we conclude that each of these questions favors arbitration, our holding will be that the trial court abused its discretion by failing to compel the matter to arbitration.[1] *Id.*

---

[1]The Lease's section entitled "Agreement to Arbitrate Disputes" provides that claims "will be resolved through binding arbitration in accordance with the" Federal

5

When the trial court does not file findings of facts and conclusions of law, we will uphold the refusal to compel arbitration if any viable legal theory—that was raised by the parties—supports that decision. *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.).

## IV. Analysis

### A. Tenants' claims fall within the scope of the Lease's arbitration agreement.

In the second argument under its sole issue, Landlord argues that Tenants' claims fall within the scope of the arbitration agreement.[2] We agree and conclude that the trial court erred to the extent it may have found otherwise. Tenants base their claims on the relationship created by the Lease. They claim that Landlord's action constitutes a breach of the Lease. Clearly, the acts that they alleged were wrongful related to the Lease. These allegations bring their claims within the sweeping scope of the arbitration agreement.[3]

---

Arbitration Act (FAA). Tenants do not challenge that Act's application. Thus, we will review the issues in this appeal through the lens of the FAA. *See* 9 U.S.C.A. § 2.

[2]Other than asserting that the attorney's fee provision is unconscionable (an assertion that we discuss below), Tenants make no argument that the arbitration agreement is invalid.

[3]We do not address Landlord's first argument, which is that the arbitrator rather than the trial court should have determined the scope of the arbitration agreement. As noted in Landlord's brief, we need not address this argument in order to dispose of this appeal. *See* Tex. R. App. P. 47.1.

## 1.   The principles that we apply to analyze an arbitration agreement's scope

Once we determine a valid arbitration agreement exists, we apply a strong presumption in favor of arbitration. *Hawk Steel Indus., Inc. v. Stafford*, No. 02-19-00040-CV, 2019 WL 3819506, at *3–5 (Tex. App.—Fort Worth Aug. 15, 2019, pet. denied) (mem. op.) (citing *J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (quoting *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding)); *see also Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). We apply the traditional contract principle to the interpretation of an arbitration provision, i.e., "[w]e give the language used its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Hawk Steel*, 2019 WL 3819506, at *3.

Arbitration provisions often contain sweeping phrases, such as "relating to." That phrase appears in the definition of "claim" in the arbitration provision at issue here. Use of the phrase "relating to" gives the agreement a broad scope:

> Arbitration agreements containing phrases such as "relating to" are . . . interpreted broadly. *See, e.g.*, *In re Bank One, N.A.*, 216 S.W.3d 825[,] 826–27 (Tex. 2007) [(orig. proceeding)] (resolving doubt as to scope of arbitration agreement covering disputes "arising from or relating in any way to this Agreement" in favor of coverage); *950 Corbindale, L.P. v. Kotts Cap*[.] *Holdings Ltd. P'ship*, 316 S.W.3d 191, 196–97 (Tex. App.—

Houston [14th Dist.] 2010, no pet.) (holding that broad arbitration provision defining "disputes" as "any dispute under or related to the partnership agreement or any document executed pursuant to the partnership agreement or any of the transactions contemplated by the partnership agreement shall be subject to arbitration" applied to all claims); *TMI[,] Inc. v. Brooks*, 225 S.W.3d 783, 791 n.7 (Tex. App.— Houston [14th Dist.] 2007, orig. proceeding) (holding that phrase "arising out of and/or related to" in arbitration agreement is "broad form in nature, evidencing the parties' intent to be inclusive rather than exclusive").

*In re Guggenheim Corp. Funding, LLC*, 380 S.W.3d 879, 887–88 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (per curiam).

The arbitration provision at issue also embraces "any . . . disputes" between the parties in the definition of "claim." The word "disputes" "is considered broad" and of an expansive reach. *FD Frontier Drilling, Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Turning to how we decide whether the claims at issue fall within the scope of the arbitration provision, "we focus on the complaint's factual allegations rather than the legal causes of action asserted." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). We are generous in deciding whether the necessary interrelationship exists: "Claims generally are arbitrable when the facts alleged 'touch matters' that are covered by, have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that contains the arbitration provision." *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 74 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Stated from a

8

different angle, only "[i]f the facts alleged 'stand-alone' and are completely independent of the contract, [is] the asserted cause of action . . . not subject to arbitration." *Saks v. Rogers*, No. 04-16-00286-CV, 2017 WL 3159712, at \*7 (Tex. App.—San Antonio July 26, 2017, pet. denied) (mem. op.).

### 2. Why we conclude that Tenants' claims fall within the scope of the Lease's arbitration agreement

Here, the arbitration provision refers "claims" to arbitration, and the definition of "claim" has an expansive breadth:

> "Claim" . . . includes any . . . dispute . . . or controversy of every kind and nature, whether arising in contract, tort (including, but not limited to, personal injury, death or damage to property) or otherwise . . . between You and Landlord arising from or relating to Your Lease . . . , the Apartment, the Property, use of Your Apartment and/or common areas, as well as the relationship resulting from this Lease.[4]

When Tenants' factual allegations are viewed in the context of the broad scope of the arbitration agreement, those allegations "touch," "have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with" the Lease that contains the arbitration provision. *See Southwinds Express Constr.*, 513 S.W.3d at 74 (internal quotation marks omitted). Tenants allege that their occupancy of the apartment was lawful—a status tied to the provisions of the Lease. Tenants' presence in the apartment was a result of the existence of the Lease. Landlord's entry into the apartment was based on the claim that Tenants breached the Lease. Indeed, Tenants'

---

[4]The Lease has a provision referencing "Excluded Claims" that removes from the scope of arbitration claims for eviction, possession of the apartment, and those less than $10,000 in value. Tenants do not argue that their claims are excluded.

9

petition alleges that Landlord's "actions constituted a breach of the Lease."

Landlord's entry certainly related to the apartment.

Tenants attempt to divorce their claims from the reach of the definition of "claim" by arguing that

> [t]he claims herein relate to [Landlord's] theft and wrongful disposition of [Tenants'] personal property. They do not relate to the Lease. Indeed, the actions in question took place after the [L]ease had been terminated. They do not relate to the "Property" which is defined in the [L]ease as the apartment complex. They do not relate to [Tenants'] apartment or common areas[] but instead [to] personal property in the apartment (a distinction not addressed in this provision in any way). And it does not involve a relationship resulting from the [L]ease. Rather, it involved the relationship between [Tenant Trojan] and his personal property.

This argument lacks any rationale to back up its conclusory statements—an understandable failing as the statements do not accord with reality. Again, Landlord's taking possession of Tenants' personal property related to the Lease; Tenants' claim that their presence was lawful is tied to the Lease, and Tenants themselves claim that Landlord's act was a breach of the Lease. The very core of Tenants' allegations in their petition is tied to the Lease. Also, given that the definition of "claims" is inclusive by referencing claims related to the apartment, it is beyond our understanding how Landlord's removing items from the apartment is not related to the apartment, and Tenants offer no explanation how that action is not related other than it involved personal property. And the statement regarding what the claim involved—"the relationship between [Tenant Trojan] and his personal property"—is

10

also indecipherable. The suit did not involve only Tenants and their personal property; it involved the acts of Landlord in relation to Tenants that impacted their rights in the personal property. The document that defined that relationship is the Lease, and claims relating to the Lease are subject to arbitration.

**B.** **The Lease's attorney's fee provision is unconscionable, but we may remedy that flaw by severing the provision from the remainder of the arbitration agreement.[5]**

In its third argument under its sole issue, Landlord argues that the trial court erred to the extent that its denial of the motion to compel arbitration was based on Tenants' assertion that the agreement is unconscionable. Tenants claim that the arbitration provision of the Lease is unconscionable because it creates exposure for attorney's fees should they not prevail in their claim that is broader than the remedy provision of the DTPA. There is a conflict between the allocation of fees specified in the Lease and the DTPA. The Lease makes no attempt to follow the statutory dictates for a contract to waive DTPA remedies: the attorney's fee section in the arbitration provision of the Lease is invalid. The remedy to address this failing is not to invalidate the Lease's arbitration scheme in total; instead, we sever the offending fee section from the agreement so that the trial court can order arbitration to proceed.

---

[5]Again, we do not address Landlord's first argument, which is that this question is one for the arbitrator rather than the trial court. *See* Tex. R. App. P. 47.1.

11

### 1. Why we conclude that the fee provision is unconscionable

The conflict underlying Tenants' claim of unconscionability results from Section 24.6 of the Lease, which provides that the prevailing party shall recover attorney's fees, and the fact that the DTPA provides for an award of attorney's fees to a defendant only if it is predicated on a finding "that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment." *See* Tex. Bus. & Com. Code Ann. § 17.50(c). Landlord does not argue that Lease Section 24.6 and Business and Commerce Code Section 17.50(c) can be reconciled.

Even though the parties' arbitration agreement is governed by the FAA, we apply Texas law to determine whether the arbitration agreement is unconscionable.[6]

---

[6]The Texas Supreme Court has described the interplay of federal and state law on the question of unconscionability as follows:

Although the Federal Arbitration Act preempts state law that conflicts with its objectives, *Southland Corp. v. Keating*, 465 U.S. 1, 10–17, 104 S. Ct. 852, [858–61] (1984), state law remains relevant to declare an arbitration agreement itself unenforceable on "such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C.[A.] § 2 (the saving clause). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion*, [563 U.S. 333, 339], 131 S. Ct. 1740, 1746 . . . (2011) (quoting *D[r.]'s Assoc[s.], Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, [1656] (1996)). In determining the arbitration agreement's validity then, a court may not construe the agreement differently from how it would construe contracts generally under state law, nor may a court rely on the uniqueness of an

We determine an arbitration agreement's validity by applying standard contract principles while favoring arbitration and render an agreement to arbitrate invalid only when it contains substantively unconscionable material terms. *Casa Ford, Inc. v. Armendariz*, No. 08-20-00084-CV, 2021 WL 3721718, at *2 (Tex. App.—El Paso Aug. 23, 2021, no pet. h.) (first citing *J.M. Davidson, Inc.*, 128 S.W.3d at 227–28; and then citing *Wright v. Hernandez*, 469 S.W.3d 744, 756 (Tex. App.—El Paso 2015, no pet.)).

The party asserting that the arbitration agreement is unconscionable bears the burden of proving the defense; "[t]he burden of proving such a ground—such as fraud, unconscionability[,] or voidness under public policy—falls on the party opposing the contract." *Poly-America*, 262 S.W.3d at 348. We apply the concept of substantive unconscionability to ensure that parties are not unfairly deprived of the ability to "vindicate" statutory rights provided to them simply because they are in an arbitral forum. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010) (orig. proceeding).

---

arbitration agreement as a basis for a state-law holding that enforcement would be unconscionable. *Perry v. Thomas*, 482 U.S. 483, 492 [n.9], 107 S. Ct. 2520, [2527 n.9] (1987). But if the circumstances would render any contract unconscionable under Texas law, they are appropriate to invalidate the agreement to arbitrate as well. *In re Poly-America*[, *L.P.*], 262 S.W.3d 337, 348 (Tex. 2008) [(orig. proceeding)].

*Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014).

The Texas Supreme Court has dealt with the question of whether a clause in an arbitration provision at odds with the DTPA is substantively unconscionable. *See Venture Cotton*, 435 S.W.3d at 227. The court's holding relied on the principle noted above that the purpose of arbitration provisions is to select a forum to resolve a dispute and not to alter the substantive rights of the parties:

> When parties agree to arbitrate a statutory claim, "a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, [3354] (1985). Thus, in *Poly-America*, we observed that arbitration agreements typically function simply as forum-selection clauses rather than statutory waivers and generalized that "[a]n arbitration agreement covering statutory claims is valid so long as 'the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights.'" . . . 262 S.W.3d at 352 (quoting *In re Halliburton*, 80 S.W.3d [566,] 572 [(Tex. 2002) (orig. proceeding)]).

*Id.* at 229.

*Venture Cotton* went on to note that in the context of the DTPA, that statute's remedies can be waived. *Id.* at 230. But for a waiver to be effective, the waiver must follow the DTPA's detailed instructions in Section 17.42 on how to effect that waiver. *Id.* (citing Tex. Bus. & Com. Code Ann. § 17.42). The arbitration provision in *Venture Cotton* lacked the statutorily mandated waiver wording that "must be 'conspicuous and in bold-face type of at least 10 points in size,' identified by a specific heading indicating the waiver, and include language substantially similar to the form the statute provides." *Id.* (citing and quoting Tex. Bus. & Com. Code Ann. § 17.42(c)(1), (2), (3)).

14

Thus, the provision of the arbitration agreement in *Venture Cotton* attempting to modify the DTPA remedies was contrary to public policy and was invalid. *Id.*; *see also 21st Mortg. Corp. v. Moore*, No. 11-17-00167-CV, 2019 WL 150953, at *7–8 (Tex. App.—Eastland Jan. 10, 2019, no pet.) (mem. op.) (applying *Venture Cotton* to hold that arbitration agreement's fees provision altering DTPA fee award scheme without required waiver language was unconscionable).

Here, neither Section 24.6 of the Lease dealing with attorney's fees nor any other provision in the arbitration agreement meets the statutory standards to waive a remedy under the DTPA. Nor does the Landlord cite us to any provision that properly effects a waiver. Thus, applying the principle of *Venture Cotton*, we conclude that Section 24.6, to the extent that it impacts Tenants' rights under the DTPA, is contrary to Texas public policy and is invalid.

Landlord attempts to rely on a different holding in *Venture Cotton* to save Section 24.6 from the claim of unconscionability. Landlord cites *Venture Cotton*'s holding that an arbitration provision allocating fees in a fashion different than the general attorney's fee statute in Chapter 38 of the Civil Practice and Remedies Code is not unconscionable per se. 435 S.W.3d at 231–33. The supreme court noted that parties are free to contract for attorney's fees as they see fit. *Id.* at 231. The court also would not engage in speculation about the provision's effect and refused to conclude that it was per se unconscionable. *Id.* at 233. In our view, this holding addresses a different question than whether an arbitration agreement may waive the fee allocation

15

provision of the DTPA without meeting the DTPA's requirements for effecting the waiver. It is that holding—rather than the one referenced by Landlord—that controls.

### 2. Why we conclude that the attorney's fee provision can be severed from the remainder of the arbitration agreement without doing violence to the agreement's essential purpose

But our conclusion that the attorney's fee provision is unconscionable does not invalidate the parties' agreement to arbitrate. The Texas Supreme Court has examined the circumstances under which it would sever an unconscionable provision from an arbitration agreement but otherwise allow arbitration to proceed. *See id.* at 230–31. As noted above, *Venture Cotton* invalidated the portion of an arbitration agreement that modified the parties' DTPA remedies. *Id.* at 230. In deciding whether to sever the offending fee provision from the arbitration agreement or to invalidate the entire agreement to arbitrate, the court's decision turned on whether the offending provision underlay the essential purpose of the arbitration agreement:

> In *Poly-America*[,] we noted that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." . . . 262 S.W.3d at 360. In determining an agreement's essential purpose, the issue is "whether or not [the] parties would have entered into the agreement absent the unenforceable provisions." *Id.* Quite clearly, the arbitration agreement's essential purpose here was to provide for a speedy and efficient resolution of disputes to ensure timely performance under the contract. The agreement's collateral effect on statutory rights and remedies appears to be a peripheral concern to this essential purpose.

*Id.*

Here, Landlord both urged the trial court and urges us to sever the attorney's fee provision should it be found unconscionable. Tenants do not argue that severing the attorney's fee provision fails to remedy their complaint. Nor do we see any indication that the parties would never have entered into the arbitration agreement if it did not contain the fee provision that we conclude is unconscionable. To the contrary, the Lease provides that if a provision of the arbitration agreement is found to be invalid, it will not invalidate the remainder of the arbitration agreement.[7] And, logically, Tenants would have been more likely and not less to enter into arbitration with an arbitration agreement that did not adversely affect their rights under the DTPA. Thus, we conclude that Section 24.6 of the Lease and its impact on Tenants' rights under the DTPA can be severed from the arbitration provision of the Lease without impacting the essential purpose of the arbitration scheme.

## V. Conclusion

We sustain Landlord's sole issue based on its second argument. We first conclude that Tenants' claims fall with the scope of the arbitration agreement. Next, we conclude that the attorney's fee provision of the arbitration agreement found in

---

[7]The Lease provides,

24.5 *Survival.* The provisions of this Section 24 will survive termination of this Lease, as well as voluntary payment in full of [Tenants'] account, any debt collection proceeding by or between [Tenants] and Landlord, and any bankruptcy by [Tenants] or Landlord. If any portion of this Section 24 is deemed invalid or unenforceable for any reason, it will not invalidate the remaining portions of this Section 24 or the Lease, each of which will be enforceable regardless of such invalidity.

17

Section 24.6 is unconscionable, but we remedy that flaw by severing the provision from the remainder of the arbitration agreement. Therefore, we reverse the trial court's order denying Landlord's motion to compel arbitration and remand this case to the trial court for the court to enter an order in which it compels the parties to arbitration and in which it stays all proceedings in the trial court until the conclusion of such arbitration.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: October 28, 2021