**Opinion issued May 16, 2023**



In The

# Court of Appeals

### For The

## First District of Texas

———————————

### NO. 01-22-00386-CV

———————————

## CHARLIE THOMAS CHEVROLET, LTD. D/B/A AUTONATION CHEVROLET GULF FREEWAY, Appellant

### V.

## PHILLIP SCHULTZ, Appellee

---

### On Appeal from the 215th District Court
### Harris County, Texas
### Trial Court Case No. 2021-67371

---

### MEMORANDUM OPINION

Appellant Charlie Thomas Chevrolet, Ltd. doing business as AutoNation Chevrolet Gulf Freeway (AutoNation) challenges the trial court's denial of its Motion to Compel Arbitration. Appellee Phillip Schultz sued AutoNation for violations of the Texas Deceptive Trade Practices Act (DTPA) and other related

causes of action arising out of allegedly deficient repair work done on Schultz's vehicle. At the time he brought the vehicle to AutoNation, Schultz was an employee of AutoNation and, as part of his employment paperwork, he signed an agreement to arbitrate claims "arising from, related to, or having any relationship or connection whatsoever with [Schultz's] seeking employment with, employment by, termination of employment from, or other association with the AutoNation." The trial court denied AutoNation's motion to compel arbitration.

AutoNation argues, in three appellate issues, that the trial court erred in denying the motion to compel arbitration because Schultz's claims under the DTPA fall within the scope of the arbitration agreement and Schultz has not established any exception to arbitration under the terms of the agreement. We conclude, however, that the scope of the arbitration agreement does not include claims involving consumer disputes. Accordingly, we affirm.

## Background

In September 2018, Schultz was hired by AutoNation and, by February of 2019, he was serving as the dealership's general manager. Schultz alleged that, in February 2019, he had his 1966 Chevy Chevelle towed to the dealership because it

was experiencing engine problems. Schultz purchased a new engine block from AutoNation and left the vehicle with the dealership for repairs.[1]

In July 2019, Schultz terminated his employment with AutoNation. The dealership, however, continued to work on the vehicle. Schultz alleges that AutoNation ultimately kept the vehicle for approximately 15 months and subcontracted work to other mechanics without his consent. Schultz alleged that the work was not done properly and that AutoNation did not complete the work as agreed. Schultz was ultimately able to reclaim the vehicle on March 20, 2020. He had it towed to new mechanic who informed Schultz about the poor workmanship and other repairs that would be necessary to return the vehicle to working order.

Schultz sent a DTPA demand to AutoNation on July 9, 2021, and then filed his original petition on October 14, 2021. None of the claims Schultz advanced involve claims related to his employment with AutoNation. Rather, he alleged

---

[1] In an appendix to his brief, Schultz included a copy of a declaration and invoice that purport to be supporting documents for his response to the motion to compel arbitration. In the declaration, Schultz states that he did not receive significant benefits as an employee and that AutoNation did not provide discounted labor. He attached a copy of a paid invoice for parts dated February 19, 2019. The invoice contained a provision notifying the customer of AutoNation's right to pursue a worker's lien pursuant to Texas Property Code section 70.001 in the event of nonpayment and its right to retain possession of the vehicle pursuant to Business and Commerce Code section 9.609 until the amount due is paid. These documents, however, do not appear in the appellate record. We may not consider matters outside the record, which includes documents attached to a brief as an exhibit or appendix that were not before the trial court. *See Democratic Schs. Research, Inc. v. Rock*, 608 S.W.3d 290, 305 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Greystar, LLC v. Adams*, 426 S.W.3d 861, 865 (Tex. App.—Dallas 2014, no pet.).

violations of the DTPA, breach of contract, breach of express warranty, and fraud in connection with the work that AutoNation performed on his vehicle. He sought damages of "at least $156,000" for repairs, loss of use of the vehicle, and other expenses.

AutoNation filed a motion to compel arbitration of Schultz's claims for violation of the DTPA, breach of contract, breach of express warranty, and fraud under the arbitration agreement that he signed at the time he became employed by AutoNation in 2018. The arbitration agreement required arbitration under the Federal Arbitration Act (FAA) for

> any claim, dispute, and/or controversy between [the parties] which would otherwise require or allow resort to any court or other government dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with Employee's [Schultz] seeking employment with, employment by, termination of employment from, or other association with the Company.

The agreement exempted certain claims from the mandatory arbitration provision:

> The sole exceptions to the mandatory arbitration provision are claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under Workers' Compensation, claims filed with the state for Unemployment Compensation and any claims or disputes arising out of any other written contract(s) between Employee and the Company where the contract specifically provides for resolution though the courts.

Finally, the arbitration agreement stated, "Any agreement contrary to, or modifying, the foregoing arbitration provisions must be entered into, in writing, by

4

the President of the Company. Oral representations made before or after Employee is hired do not alter this Agreement."

The agreement was signed by Schultz and a representative of AutoNation, above a signature block stating:

> MY SIGNATURE ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND BY ALL OF THE ABOVE TERMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQURES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT, EXCEPT AS EXPRESSLY PROVIDED OTHERWISE HEREIN.

In its motion to compel arbitration, AutoNation asserted that Schultz had the vehicle towed to the dealership during work hours while he was employed by AutoNation and that he received "substantial benefits" as an employee in that he "was charged a substantially reduced hourly labor rate for repairs," and he "incurred labor costs in the amount of approximately $6,000 that were never paid" after he terminated his employment.

Schultz disputed that he received any benefits as an employee of AutoNation in connection with the repairs on his vehicle. He further argued that his claims as a consumer did not fall within the scope of his arbitration agreement.

The trial court denied the motion to compel arbitration without stating the grounds for its ruling. This appeal followed.[2]

## Denial of Motion to Arbitrate

In three issues, AutoNation argues that the trial court erred in denying its motion to compel arbitration.

## A.    Standard of Review and Legal Principles

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115. When a trial court does not issue findings of fact or conclusions of law to explain its reasons for denying a motion to compel arbitration, we uphold the trial court's decision on any appropriate legal theory urged below. *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at *4 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.).

---

[2]    *See* TEX. CIV. PRAC. & REM. CODE § 51.016 (allowing interlocutory appeal of order denying motion to compel arbitration under FAA).

6

Under the FAA, which governs the arbitration agreement here, "a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the disputed claim falls within the scope of that agreement." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021). Whether a disputed claims fall within the scope of an arbitration agreement is a question that we review de novo. *Id.* at 283. While doubts regarding an agreement's scope are generally resolved in favor of arbitration, a party "can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Id.* (quoting *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)).

"Claims generally are arbitrable when the facts alleged 'touch matters' that are covered by, have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that contains the arbitration provision." *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 74 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, no pet.)); *Davis v. Boyd*, No. 05-21-00154-CV, 2022 WL 4354174, at *4 (Tex. App.—Dallas Sept. 20, 2022, no pet) (mem. op.) ("When the contract contains a broadly written arbitration clause, so long as the allegations touch matters, have a significant relationship with, or are inextricably enmeshed or factually intertwined with the contract, the claim will be arbitrable."). However, if

7

the facts alleged in support of the claim "stand alone," are "completely independent of the contract" containing the arbitration provision, and "the claim can be maintained without reference to the contract," then the claim is not subject to arbitration. *Davis*, 2022 WL 4354174, at *4; *Saks v. Rogers*, No. 04-16-00286-CV, 2017 WL 3159712, at *7 (Tex. App.—San Antonio July 26, 2017, pet. denied) (mem. op.).

Once the court determines that a valid arbitration agreement exists, it applies a strong presumption in favor of arbitration. *Hawk Steel Indus., Inc. v. Stafford*, No. 02-19-00040-CV, 2019 WL 3819506, at *2 (Tex. App.—Fort Worth Aug. 15, 2019, pet. denied) (mem. op.) (citing *J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). Indeed, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Henry*, 551 S.W.3d at 115 (quoting *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding)); s*ee Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). We apply traditional contract principles to the interpretation of an arbitration provision, and thus "[w]e give the language used its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Hawk Steel*, 2019 WL 3819506, at *3.

In deciding whether the claims at issue fall within the scope of the arbitration provision, "we focus on the complaint's factual allegations rather than the legal causes of action asserted." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). "A trial court that is asked to evaluate the scope of a contract's arbitration clause may summarily decide whether to compel arbitration, based on affidavits, pleadings, discovery, and stipulations." *Davis*, 2022 WL 4354174, at *3 (quoting *Am. Emp'rs' Ins. Co. v. Aiken*, 942 S.W.2d 156, 159 (Tex. App.—Fort Worth 1997, no writ)).

## B.    Analysis

AutoNation argues that Schultz's claims under the DTPA and related causes of action arising out of the repairs undertaken on his vehicle fall withing the scope of the arbitration agreement that Schultz signed in 2018 when AutoNation hired him. The relevant arbitration provision provides:

> **Arbitration of Disputes**. Both employee signing below (the "Employee") and the Company (as defined below) agree that any claim, dispute, and/or controversy between them which would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with Employee's seeking employment with, employment by, termination of employment from, or other association with the Company, shall be resolved through mandatory, neutral, binding arbitration on an individual basis only. For purposes of this Arbitration Agreement ("Agreement"), the "Company" is defined as the entity Employee is employed by, together with its parents, subsidiaries, affiliates, predecessors, successors and assigns, and each of their respective owners, directors, officers, managers, employees, vendors, and agents. This Agreement

covers all theories and disputes, whether styled as an individual claim, class action claim, private attorney general claim or otherwise, and includes, but is not limited to, any claims of discrimination, harassment, breach of contract, tort, or alleged violations of statute, regulation, or ordinance, or any claims in equity.

According to AutoNation, the parties agreed that arbitration would be the "sole method of resolving any claim" having "any relationship or connection whatsoever 'with the Company.'" AutoNation argues that the arbitration provision constitutes an agreement to submit "any claim" to arbitration and expressly includes "breach of contract, tort, or alleged violations or statute." It further argues that Schultz's claims fall within the scope of the agreement because his allegations "pertain to [his] employment by, and association with, [AutoNation] subject to arbitration under the Agreement." AutoNation points out that Schultz brought the vehicle to the dealership while he was employed there as the general manager, and it asserts that he received discounted labor as a benefit of his employment.

AutoNation's construction injects words into the arbitration provision, and further ignores key language in the rest of the clause. The "Arbitration of Dispute" provision does not provide that any claims having any connection "with the Company" are subject to arbitration. Rather, it compels arbitration of claims "having any relationship or connection whatsoever with Employee's seeking employment with, employment by, termination of employment from, or other association with the Company." AutoNation's construction isolates the purportedly

10

broad language requiring arbitration for "any claim . . . arising from, related to, or having any relationship or connection whatsoever" from the rest of the provision. *See Jody James Farms, JV*, 547 S.W.3d at 634 (reading terms of arbitration agreement "in the context in which they are used" and noting that first sentence must be read in light of second "which is devoted to restricting the scope of arbitration in a specific manner"). In its entirety, the arbitration provision provides that arbitration is required for any claim arising from, related to, or having any relationship or connection with "Employee's [Schutlz's] seeking employment with, employment by, termination of employment from, or other association with the Company [AutoNation]." Thus, the arbitration provision, when read in its entirety, provides only for arbitration of conflicts arising out of the employee-employer relationship. *See id.*

AutoNation also points to the "other association" language in the arbitration clause to argue the language broadens the scope of the clause to include conflicts that might arise outside the employment context. We disagree. The phrase "other association with [AutoNation]" is part of a larger clause requiring arbitration of any claim "having any relationship or connection whatsoever with Employee's seeking employment with, employment by, termination of employment from, or other association with the Company." The canons of statutory construction require us to read the phrase "other association" in the context of the list that precedes the

11

phrase, which limits the scope of arbitrable claims to those arising out of the employment-employee relationships. *See, e.g.*, *Certain Underwriters at Lloyd's of London v. Cardtronics, Inc.*, 438 S.W.3d 770, 782 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Under the 'last antecedent' doctrine, a canon of contract and statutory construction, 'relative and qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote.'"); *cf. Greater Hou. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015) ("The canon of statutory construction known as *noscitur a sociis*—'it is known by its associates'—holds that the meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it.").

The remainder of the arbitration agreement reinforces this construction. For example, the agreement excludes certain claims from binding arbitration. The express exemptions relate to employment-related claims:

> The sole exceptions to the mandatory arbitration provision are claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under Workers' Compensation, claims filed with the state for Unemployment Compensation and any claims or disputes arising out of any other written contract(s) between Employee and the Company where the contract specifically provides for resolution though the courts.

The bold-face language immediately above the signature line of the agreement likewise confirms that the agreement requires Schultz "to arbitrate any and all

12

disputes that arise out of [his] employment, except as expressly provided otherwise herein." And as noted, the listed exceptions concern employment-related disputes.

Reading the entirety of the agreement in context, we conclude that the scope of the arbitration agreement requires arbitration of claims, disputes or controversies arising out of Schultz's employment with AutoNation.

AutoNation argues that Schultz's claims regarding the allegedly defective repairs to his 1966 Chevy Chevelle arise out of his employment with AutoNation because he brought the vehicle to the dealership while he was employed there. AutoNation further argues that Schultz received benefits, such as discounted labor costs, as an employee. Even if true, these facts are irrelevant. The fact that Schultz brought the car in for repair while still employed by AutoNation or that he may have received a discount for the repair work does not transform this consumer dispute into a claim involving the employee-employment relationship. Looking to Schultz's factual allegations, we further observe that his factual allegations say nothing about his employment at AutoNation. *See In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (orig. proceeding) (holding that courts must "focus on the factual allegations of the complaint, rather than the legal causes of action asserted" to determine whether claim falls within scope of arbitration clause"); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754 (providing that courts "focus on the complaint's factual allegations rather than the legal causes of action asserted" when deciding

13

whether claims fall within scope of arbitration provision). None of his allegations implicate employee benefits or employee interactions with his employer. Instead, the factual basis for his allegations is the quality of the repairs he received as a consumer. None of his claims have a significant relationship to or are enmeshed or intertwined with his employment. Rather, any consumer who had brought a vehicle to AutoNation for repairs could have made substantially similar allegations. *See Southwinds Express Constr., LLC*, 513 S.W.3d at 74; *Davis*, 2022 WL 4354174, at *4. This conclusion is further supported by the allegations that, even after he terminated his employment with AutoNation in July 2019, the repairs on his car were on-going and Schultz did not retrieve his car until March 2020.

Stated another way, Schultz's factual allegations in support of his claims for violation of the DTPA, breach of contract, breach of warranty, and fraud "stand alone" and are "completely independent of" his employment. These factual allegations and causes of action were alleged by Schultz without any reference to his employment with AutoNation. His claims against AutoNation could have been alleged even if he had never been an employee of that company. Thus, the agreement that he signed to arbitrate employment-related disputes does not apply to this suit alleging failures or deficiencies in the service he received for his car as a consumer. *See Davis*, 2022 WL 4354174, at *4; *Saks*, 2017 WL 3159712, at *7; *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig.

14

proceeding) (providing that claims must be submitted to arbitration if "liability arises solely from the contract or must be determined by reference to it").

## Conclusion

We affirm the trial court's order denying AutoNation's motion to compel arbitration.

Richard Hightower
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

15